CARMINE CALABRESE, PLAINTIFF-RESPONDENT, v. TRENTON STATE COLLEGE, DEFENDANT-APPELLANT.

CARMINE CALABRESE, PLAINTIFF-RESPONDENT, v. DR. WILLIAM EAMES, DR. ALEXANDER FARINA, AND TRENTON STATE COLLEGE, DEFENDANTS-APPELLANTS.

CARMINE CALABRESE, PLAINTIFF-RESPONDENT, v. DR. WILLIAM EAMES, DR. ALEXANDER FARINA, AND TRENTON STATE COLLEGE, DEFENDANTS-APPELLANTS, AND ELI LILLY & COMPANY, KETCHUM DISTRIBUTORS AND ROBBINS PHARMACY, JOINTLY AND SEVERALLY, DEFENDANTS.

Argued February 4, 1980—Decided April 1, 1980.

*Maurice J. Gallipoli* argued the cause for appellant Dr. William Eames (*Lamb, Hutchinson, Chappell, Ryan & Hartung*, attorneys; *Mary B. Rogers*, on the brief).

*Douglas R. Kleinfeld* argued the cause for appellant Dr. Alexander Farina (*Conway, Reiseman, Bumgardner, Hurley & Kleinfeld*, attorneys).

*Lawrence G. Monchar*, Deputy Attorney General, argued the cause for appellant Trenton State College (*John J. Degnan*, Attorney General of New Jersey, attorney).

*Irving I. Vogelman* argued the cause for respondent (*Krivitzky & Springer*, attorneys; *Howard Springer* on the brief).

The opinion of the Court was delivered by

SULLIVAN, J.

This appeal in a medical malpractice case is by virtue of a dissent in the Appellate Division. *R.* 2:2–1(a)(2).

Plaintiff Carmine Calabrese, while a student at Trenton State College, was bitten on the leg by a stray dog. He received emergency treatment at a local hospital where he was given a tetanus shot. When the dog could not be found to be tested for

rabies, plaintiff received a series of fourteen anti-rabies injections recommended by defendant Dr. William Eames, the attending physician at the college infirmary. Dr. Eames administered ten of the injections and gave the remaining vaccine to plaintiff and told him to have his family doctor complete the series. Accordingly, plaintiff went to defendant Dr. Alexander Farina who gave him the last four injections. Plaintiff alleges that neither doctor warned him of any possible side effects from the vaccine.

After receiving the injections plaintiff began to develop neurological problems. He had trouble concentrating, thinking clearly, reading, retaining information and was unable to complete college. He alleges that he cannot hold down a job and that he has been declared to be totally disabled for federal social security purposes.

On July 8, 1974 plaintiff filed suit against the two physicians and the college alleging that his present physical and mental condition was caused by the anti-rabies injections. He charged that administration of the vaccine involved known medical risks and that the failure of the doctors to give him any warning as to possible adverse side effects constituted malpractice.[1]

An extended period of discovery was granted. Although ordered to furnish defendants with the names of experts he intended to use at trial and with copies of their reports, plaintiff did not comply to any substantial degree. Finally, by order dated November 3, 1976, the trial judge denied plaintiff's motion for a further extension of time and barred plaintiff from introducing expert testimony by any person whose name and report had not been supplied to defendants by October 22, 1976.

---

[1] In an amended complaint, plaintiff also sued the manufacturer of the vaccine, its distributor and the retail seller. The claims against these parties were dismissed on motion. The Appellate Division upheld the dismissal and plaintiff has not sought to appeal that ruling.

Thereafter, defendants moved for and were granted summary judgment, the trial court ruling that expert testimony was essential to establish that a failure to warn plaintiff of possible adverse side effects constituted a departure from recognized medical standards for disclosure. The court stated that it could not "find anything in the medical or other expert witnesses reports that have been compiled on behalf of the plaintiff to indicate that any one or another of those experts would testify that the defendant doctors did not meet the standard."

On appeal, the Appellate Division upheld the order barring plaintiff's use of expert witnesses. However, it also concluded that in an informed consent situation such as this, where it is alleged that the doctors failed to give plaintiff *any warning*, expert testimony was not needed to establish that such a failure constituted a departure from norms of medical practice. It held, therefore, that summary judgment in favor of the doctors should not have been granted.[2] It emphasized, though, that it was dealing only with the standard for disclosure and not the existence or extent of the risk involved. As to that, the Appellate Division stated that clearly expert proof would be necessary if a jury issue were to be established. The matter was remanded to the trial court.

One judge dissented on the ground that even if plaintiff proved a failure to make any disclosure, he still had to establish that administration of the vaccine created a risk of harm and this admittedly could be shown only by expert proof. Since the Appellate Division was upholding the order barring plaintiff from using expert witnesses, the dissenting judge would have affirmed the judgment dismissing the complaint because, by virtue of such order, plaintiff was now unable to establish an essential element of his case.

---

[2]This ruling also included the summary judgment in favor of Trenton State College which was named as a defendant based upon the doctrine of *respondeat superior*.

Defendants' appeal to this Court is limited to the issue raised by the dissent, *R.* 2:2–1(a)(2), namely, whether the order of November 3, 1976 barring plaintiff from calling expert witnesses will effectively prevent plaintiff from establishing a risk of harm on which the standard for disclosure rests.

On this issue, the majority ruling remanding the matter to the trial court is affirmed. Plaintiff asserts that he intends to sustain this burden by the use of extensive medical literature. We note that *Evidence Rule* 9(2)(e), which provides for judicial notice of "specific facts and propositions of generalized knowledge which are capable of immediate determination by resort to sources or reasonably indisputable accuracy" may be applicable to plaintiff's proffered evidence on remand. Plaintiff also refers to medical reports of treating physicians, and defendant doctors' depositions in which they state that they gave plaintiff warnings as to possible hazards in the injections. Without passing on the admissibility or adequacy of the particular proofs, we conclude that the existence and extent of the risk of harm involved in the administration of the vaccine could be established by this means.

Affirmed.

*For affirmance*—Justices SULLIVAN, PASHMAN, CLIFFORD, HANDLER and POLLOCK—5.

*For reversal*—None.