260 N.J. Super. 322 (1992)
616 A.2d 933
ISABEL FEBUS AND ANGEL FEBUS, PLAINTIFFS-APPELLANTS,
v.
LENORA BAROT, M.D., AND JOHN/JANE DOES, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1992.
Decided November 19, 1992.
*323 Before Judges ANTELL, SKILLMAN and VILLANUEVA.
Ian Stuart, attorney for appellants.
Parker, McCay & Criscuoli, attorneys for respondents (Stacy L. Moore, Jr., on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
In this medical malpractice action plaintiffs appeal from an order of August 23, 1991, granting defendant's motion for summary judgment. The trial court granted summary judgment *324 because plaintiffs had failed to appear in opposition to defendant's motion. On September 23, 1991, plaintiffs moved, under R. 4:50-1(a) and (f), for reconsideration[1] of the order, and argued that their failure to appear amounted to excusable neglect or, in the alternative, an exceptional circumstance. Plaintiffs explained that defendant's motion for summary judgment went unopposed because their attorney's secretary had made an error in diarying the hearing date. The trial court denied plaintiffs' motion for reconsideration on the ground that their explanation did not amount to excusable neglect or exceptional circumstances within the meaning of R. 4:50-1(a) and (f) or present a meritorious defense to the motion. Plaintiffs now appeal.
On December 3, 1987, defendant Lenora Barot (hereinafter "defendant") performed plastic surgery to correct stretch marks on the abdomen of plaintiff Isabel Febus (hereinafter "plaintiff"). According to plaintiff, before the procedure began, defendant told plaintiff that the only visible consequence of the operation would be a bikini scar over the pubic area. In her deposition, plaintiff stated that defendant told her that she
would have a swellingness of course and that it would take, some people take about a year to recover and that the incision would not show, it would be like a white line, because I specific [sic] asked about it, I said would the scar show and she says it will show for now but some people take about a year and a year went by.
Unfortunately, the operation apparently resulted in widespread disfiguration upon the surface of plaintiff's abdomen. She now has what she describes as extensive scarring extending from above the right leg in half-moon shape to an indentation at the navel and extending to the left side in half-moon shape for approximately six inches. She complains of pain in the scar area when exercising and numbness throughout the scar tissue.
*325 Plaintiffs filed a two-count complaint on November 22, 1989. The first count alleges in general terms that defendant and others were negligent in the performance of surgery and therefore "did not provide medical care consistent with the appropriate standard of medical care." The second count asserts a demand for damages based upon the loss of consortium to Angel Febus, plaintiff's husband. On June 26, 1990, the court issued an amended scheduling order requiring plaintiffs to produce any and all expert reports on or before September 15, 1990. Plaintiffs did not comply with that order. On May 2, 1991, defendant moved for production of expert reports, and on May 31, 1991, an order was entered requiring plaintiffs to produce the names, addresses, qualifications and reports of any and all expert witnesses by July 15, 1991, "or thereafter be barred from introducing at trial any testimony or ... report of any such expert witnesses."
Plaintiffs never complied with the May 31, 1991, order, and on July 23, 1991, defendant moved for summary judgment returnable August 23, 1991. By order of August 23, 1991, the motion was granted. Plaintiffs' motion for reconsideration was filed on September 23, 1991. The court, in an oral opinion, denied the motion for two reasons. First, as noted earlier, the court determined that the error in diarying the motion amounted neither to excusable neglect nor an exceptional circumstance. Secondly, the court denied the motion on the further ground that plaintiffs' failure to submit expert's reports prohibited them from proving their cause of action. On appeal, plaintiffs maintain that the trial court erred in finding that their attorney's neglect was not excusable and in determining that they would be unable to proceed with their cause of action without expert testimony.
We conclude that under the circumstances, the failure of plaintiffs' attorney to respond to the motion for summary judgment was not so egregious as to bar their right to relief from the order for summary judgment. Counsel's explanation *326 was that his secretary had erroneously diaried the motion for August 30 instead of August 23, 1991. He further explained that he had to be out of the country on business from August 22 to September 9, 1991. Therefore, when he realized the error he immediately mailed a letter request to the clerk's office on August 22 to reschedule the motion for a date subsequent to September 10, 1991. The letter request was accompanied by a request for oral argument. Under these circumstances, we conclude that the failure of plaintiff to defend the motion on August 23 amounted to excusable neglect pursuant to R. 4:50-1(a), since it was "attributable to honest mistake, accident, or any cause not incompatible with proper diligence." In re T., 95 N.J. Super. 228, 235, 230 A.2d 526 (App.Div. 1967).
Arguing that no experts were necessary to prove their cause of action, plaintiffs claim lack of informed consent, and rely upon Largey v. Rothman, 110 N.J. 204, 540 A.2d 504 (1988), and Canterbury v. Spence, 464 F.2d 772 (D.C. Cir.1972), cert. denied, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972). Largey v. Rothman followed Canterbury v. Spence in adopting the "prudent patient" test for informed consent. In so doing, it discarded the "professional" standard which it had adopted in Kaplan v. Haines, 96 N.J. Super. 242, 232 A.2d 840 (App.Div. 1967), aff'd, 51 N.J. 404, 241 A.2d 235 (1968). Under the professional standard, "a physician is required to make such disclosure as comports with the prevailing medical standard in the community  that is, the disclosure of those risks that a reasonable physician in the community, of like training, would customarily make in similar circumstances." Largey 110 N.J. at 209, 540 A.2d 504. As the court explained, the
"professional" standard rests on the belief that a physician, and only a physician, can effectively estimate both the psychological and physical consequences that a risk inherent in a medical procedure might produce in a patient. The burden imposed on the physician under this standard is to "consider the state of the patient's health, and whether the risks involved are mere remote possibilities or real hazards which occur with appreciable regularity."
[Id. at 210, 540 A.2d 504 (quoting 2 D. Louisell and H. Williams, Medical Malpractice § 22.08 at 22-34 (1987).]
*327 In contrast to the professional standard, the "prudent patient," or "materiality of risk," standard requires disclosure by the physician of all risks which would materially affect the patient's decision to undergo the medical procedure. As the Largey court explained:
A risk would be deemed "material" when a reasonable patient, in what the physician knows or should know to be the patient's position, would be "likely to attach significance to the risk or cluster of risks" in deciding whether to forego the proposed therapy or to submit to it.
[Id. at 211-12, 540 A.2d 504 (quoting Canterbury v. Spence, 464 F.2d at 787).]
Thus, the sufficiency of disclosure under the prudent patient standard requires that the disclosure be viewed through the mind of the patient, not the physician. Implicit in this shift of emphasis is the recognition that expert testimony is no longer required in order to establish the medical community's standard for disclosure and whether a physician failed to meet that standard.
In our view, however, the prudent patient standard does not always dispense entirely with the need for expert medical testimony in an informed consent case. Although, under this doctrine, no medical expert is required to prove that an undisclosed risk would have been material to the patient's consent, it must first be shown that the risk was one of which the physician should have been aware, and that it was recognized within the medical community.
As we said in Calabrese v. Trenton State College, 162 N.J. Super. 145, 156, 392 A.2d 600 (App.Div. 1978), aff'd, 82 N.J. 321, 413 A.2d 315 (1980), the informed consent doctrine requires a plaintiff to prove that the medical treatment given "carries with it recognized and defined risks of adverse consequences." In Calabrese, plaintiff unsuccessfully brought suit to recover damages for adverse side effects from the administration of a rabies vaccine. The Appellate Division noted that plaintiff's appeal "focused on the necessity for expert testimony regarding the standard for disclosure, not the existence or extent of risks associated with a given course of treatment." Id. 162 *328 N.J. Super. at 156, n. 3, 392 A.2d 600. The Appellate Division found that proof of a doctor's failure to disclose a risk is first dependent upon plaintiff proving "by competent expert testimony" that the treatment given "carries with it recognized and defined risks of adverse consequences." Id. at 156, 392 A.2d 600. It then stated the following:
Clearly, expert testimony as to the nature of such risks is necessary. Hence, in this case, plaintiff would have to produce expert proof that the condition from which plaintiff is suffering is a recognized risk associated with ingestion of the duck-embryo vaccine unless of course the existence and magnitude of the risk was admitted. Without such proof, a jury issue concerning the doctor's liability for failure to disclose that risk would not arise.

[Id.] (Emphasis ours).
We do not overlook the fact that Largey v. Rothman was decided ten years after Calabrese v. Trenton State College. However, Largey in no way disturbs Calabrese's significant dictum. As we have explained, Largey only shifted the focus of inquiry in determining the materiality of a risk from the doctor's perspective to that of the patient's. It did not alter the rule of Calabrese that proof of a risk recognized by the professional community must come from a qualified expert. Indeed, the Largey opinion specifically discussed Calabrese, and noted that Calabrese had cited Canterbury for the proposition that "the doctor's duty of disclosure is imposed by law and not by medical consensus." Id. 110 N.J. at 215, 540 A.2d 504.
We therefore conclude that because of their failure to produce an expert's report showing that extensive scarring is a risk recognized within the medical community as an accompaniment of the surgery that was performed, plaintiffs could not prove their cause of action, and that the order for summary judgment was properly granted.
Affirmed.
NOTES
[1] Although entitled a motion for reconsideration, plaintiffs' application was more precisely a motion for relief from judgment.