271 N.J. Super. 513 (1994)
638 A.2d 1360
MARY ADAMSKI, PLAINTIFF-APPELLANT,
v.
CHARLES M. MOSS, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 23, 1994.
Decided March 23, 1994.
*515 Before Judges PRESSLER, DREIER and KLEINER.
Mary Adamski, appellant pro se.
Francis & Berry, attorneys for respondent (John O. Farrell, of counsel; Peter A. Olsen, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff appeals pro se from a summary judgment dismissing her medical malpractice action against defendant. The trial judge based his decision on plaintiff's failure to secure and provide the report of an expert witness which the judge deemed necessary to her eventual presentation of a prima facie case to the jury. In doing so, the judge rejected plaintiff's claim that the learned treatise rule authorized her to introduce certain medical/legal treatises to supply proofs concerning the standard of medical care and the breach by defendant.
On November 13, 1989, plaintiff filed a medical malpractice complaint against defendant alleging that defendant caused nerve damage to her right arm during an operation to excise a nonmalignant lump located on the right side of her neck. Plaintiff claimed that defendant failed to disclose the pertinent risks inherent *516 in the operation and thus failed to obtain her informed consent to the procedure.
Plaintiff had initially consulted her family doctor in November 1987 to examine a lump on the side of her neck. A biopsy revealed that the lump was negative for cancer, and the family doctor advised plaintiff to have a surgeon look at the lump preparatory to its removal. At the suggestion of her family doctor, plaintiff consulted defendant who advised her that the surgery would be a same-day procedure and would not require her to stay overnight unless she experienced "oozing" from the wound. Plaintiff believed that such "oozing" referred to infection, and the term apparently was not further explained. Plaintiff admits to signing a consent form for the surgery which took place at Pascack Valley Hospital on November 14, 1987. Plaintiff claims, however, that defendant failed to inform her of any specific risks which could result from the procedure, or to advise plaintiff concerning any alternatives to surgery. Specifically, she states that no reference was made to the possibility that the surgery could result in nerve damage.
After the surgery, plaintiff was nauseous, felt pain in her right arm, and found that she could not raise her arm. She remained in the hospital until November 16, 1987. She later learned that there had been nerve damage during the surgery, but defendant told her that he was not aware of what happened to her arm. Defendant called in a neurologist and, although plaintiff was scheduled to be x-rayed, no x-ray was performed during her stay in the hospital. She was unable to use her arm for several months, and years later still experiences pain.
Plaintiff's complaint was filed by a law firm. A case management order required plaintiff to furnish defendant with an expert report setting forth the factual basis of her claim. Defendant moved to dismiss the complaint on August 6, 1991 when no such report was forthcoming. Simultaneously, plaintiff's attorneys filed a cross-motion requesting an order relieving them as counsel. The attorneys' motion was granted, but defendant's motion was *517 denied without prejudice, and plaintiff was given an additional forty-five days to procure new counsel and provide defendant with an expert report. On December 5, 1991 defendant again moved for summary judgment based upon plaintiff's failure to provide the report. Plaintiff's responding certification indicated that she was unable to secure the services of an expert witness because she was proceeding pro se. She informed the court that she intended to prove the medical aspects of her case through learned treatises. The trial judge denied the motion to dismiss the complaint, but barred plaintiff from using expert testimony to support her claim during the trial.
On June 4, 1992, defendant again renewed his motion for summary judgment based upon plaintiff's failure to submit an expert report to support her claim. Plaintiff reiterated that she intended to rely on learned treatises, but the court granted defendant's motion by an order dated July 30, 1992.
When plaintiff's complaint was filed in 1989, learned treatises were inadmissible substantively in New Jersey, except for their use for impeachment of a witness, and then only when the witness recognized the treatise as authoritative. Ruth v. Fenchel, 21 N.J. 171, 176, 121 A.2d 373 (1956). During the pendency of this action, this rule was overturned first by the Supreme Court in Jacober v. St. Peter's Medical Center, 128 N.J. 475, 608 A.2d 304 (1992), and then by the legislative and judicial adoption of N.J.R.E. 803(c)(18), the learned treatise exception to the hearsay rule. The evidence rule had been adopted prospectively by the Supreme Court in Jacober, 128 N.J. at 493-495, 608 A.2d 304, and textually was identical to Fed.R.Evid. 803(18). The New Jersey rule contained in the 1993 Evidence Rules varies only slightly from that text.[1]
*518 The rule in Jacober, and the substantially equivalent N.J.R.E. 803(c)(18), applies to the trial of cases, not to a commencement of the cause of action. Prospective application of the learned treatise rule, therefore, refers to trials that take place after July 8, 1992, not to causes of actions arising after that date. We thus agree with plaintiff's position that her claim is governed by the learned treatise exception to the hearsay rule.
This having been said, we must examine the learned treatise exception and determine whether it could enable plaintiff to supply the expert proof found lacking by the trial judge. The judge correctly determined that plaintiff was required to produce proof, usually through expert testimony, concerning the appropriate standard of care in this medical malpractice case. Klimko v. Rose, 84 N.J. 496, 502-505, 422 A.2d 418 (1980); Fernandez v. Baruch, 52 N.J. 127, 132, 244 A.2d 109 (1968). In some cases the facts "may be such that the common knowledge and experience possessed by laymen may enable a jury to conclude, without expert testimony, in a malpractice action as in any other negligence action that a duty of due care has been breached." Klimko v. Rose, supra, 84 N.J. at 503-504, 422 A.2d 418. This, however, is not such a case. In view of her separate claims of negligence in the manner in which defendant performed the operation and in defendant's failure to obtain her informed consent, plaintiff is required to establish the standard of care in either or both of these areas. With regard to her negligence claim, she must demonstrate by competent expert testimony that defendant deviated from generally accepted medical practices in the manner in which he performed the operation and that this deviation was a proximate cause of her injury.
With respect to her claim of lack of informed consent, plaintiff is required to prove under the "prudent patient" or "materiality of risk" standard that the physician failed to warn "of all risk which would materially affect the patient's decision to undergo the medical procedure." Febus v. Barot, 260 N.J. Super. 322, 327, 616 A.2d 933 (App.Div. 1992). As the Supreme Court *519 stated in Largey v. Rothman, 110 N.J. 204, 540 A.2d 504 (1988), a risk is "deemed `material' when a reasonable patient, in what the physician knows or should know to be the patient's position, would be `likely to attach significance to the risk or cluster of risks' in deciding whether to forego the proposed therapy or to submit to it." Id. at 211-212, 540 A.2d 504 (quoting Canterbury v. Spence, 464 F.2d 772, 787 (D.C. Cir.), cert. denied, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972)). With regard to this latter duty, the court in Febus noted that while "no medical expert is required to prove that an undisclosed risk would have been material to the patient's consent, it must first be shown that the risk was one of which the physician should have been aware, and that it was recognized within the medical community." 260 N.J. Super. at 327, 616 A.2d 933.
Plaintiff urges that the medical/legal textbooks she possesses should be admitted into evidence and that these will fulfill her requirement to provide expert proof. Such proof necessarily would be required to establish (1) the standard of medical care in the performance of the operation, (2) whether the particular risk was one recognized by the medical community, (3) whether the operation was a material contributing factor to plaintiff's temporary paralysis and alleged continuing discomfort, and, (4) since she also has suggested that this operation should only have been performed by a neurosurgeon, whether defendant possessed the necessary qualifications to perform the operation.
Among the hearsay exceptions for statements not dependent upon a declarant's availability, is:
Learned Treatises. To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by testimony or by judicial notice. If admitted, the statements may not be received as exhibits but may be read into evidence or, if graphics, shown to the jury. [N.J.R.E. 803(c)(18)].
This rule certainly does not make all reference books admissible as evidence. First, the learned treatise must either be "called to the attention of an expert witness upon cross-examination" or be *520 "relied upon by the expert in direct examination." Ibid. The rule thus requires that there must be an expert on the stand either as the party's witness or as an adverse witness being cross-examined. Tart v. McGann, 697 F.2d 75, 78 (2nd Cir.1982). Second, the particular treatise must be "established as a reliable authority by testimony or by judicial notice." Ibid. In her brief, plaintiff recognizes that she lacks such qualifying authority, but suggests that she plans to call defendant or his expert as her witness and ask whether either recognizes her texts as "reliable authority."
Insofar as she would call defendant's expert, she has no right to appropriate the witness' expert knowledge without compensation, nor may the expert be required to testify for her if he chooses not to. Hull v. Plume, 131 N.J.L. 511, 516-517, 37 A.2d 53 (E. & A. 1944). More recently, in Graham v. Gielchinsky, 126 N.J. 361, 599 A.2d 149 (1991), the Supreme Court, there treating issues extraneous to our case, reiterated that "New Jersey is in the minority of jurisdictions in not allowing the compulsion of expert opinion testimony." Id. at 369, 599 A.2d 149 (citing Genovese v. N.J. Transit Rail Operations, Inc., 234 N.J. Super. 375, 380-381, 560 A.2d 1272 (App.Div.), certif. denied, 118 N.J. 195, 570 A.2d 960 (1989)).
Defendant, on the other hand, could be asked concerning the fact of his expert opinion in the past, rather than being required to make an expert evaluation in the present. Rogotzki v. Schept, 91 N.J. Super. 135, 147-149, 219 A.2d 426 (App.Div. 1966). Cf. Stigliano v. Connaught Laboratories, Inc., 270 N.J. Super. 373, 378, 637 A.2d 223 (App.Div. 1994) (applying this principle to a defendant compelling a plaintiff's treating physician to testify). The treatises might have been qualified during a deposition. See Chizmadia v. Smiley's Point Clinic, 965 F.2d 647, 648 (8th Cir.1992). We seriously doubt, however, that since discovery has been completed and any opportunity to secure the qualification of the treatises during depositions, has now passed, plaintiff could call defendant at trial and establish that the treatises were, as suggested by plaintiff, "reliable authority through defendant's testimony."
*521 We can finesse this intriguing inquiry, by reference to the requirements of N.J.R.E. 803(c)(18) that the treatises are required to be "called to the attention of an expert witness upon cross-examination or relied upon by the expert in direct examination." Even if they were established as reliable authority by testimony or judicial notice, they would not be relied upon by an expert during direct examination, since plaintiff has no expert witness. Even if she called defendant as her witness and was given leave to cross-examine him, there is virtually no possibility that defendant would establish the texts as reliable authority so that they could be presented against him.
There is always the possibility that the particular texts or portions thereof could be recognized as reliable authority by judicial notice under N.J.R.E. 201(b)(3) ("[f]acts which may be judicially noticed include ... specific facts and propositions of generalized knowledge which are capable of immediate determination by resort to sources whose accuracy cannot reasonably be questioned"). Generella v. Weinberger, 388 F. Supp. 1086, 1090 (E.D.Pa. 1974). As noted in Biunno, Current N.J. Rules of Evidence, comment 11 on N.J.R.E. 201 (1993-1994):
Under N.J.R.E. 803(c)(18) a court is expressly authorized to take judicial notice that certain "published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art" constitute "reliable authority" which may properly be relied upon by testifying experts, used to cross-examine such experts or quoted from by the attorneys in a case. If the court determines that there is not a sufficient basis for taking notice of a purported authority, it should conduct a hearing pursuant to N.J.R.E. 104 and decide the issue on the basis of expert testimony received at that hearing.
[at 167-168].
Neither we nor the trial judge have been informed of the text of the materials plaintiff wished to qualify, possibly by judicial notice. It is unlikely that a medical/legal text would qualify to prove medical standards. Cf. Hemingway v. Ochsner Clinic, 608 F.2d 1040, 1047 (5th Cir.1979). Unless the trial judge could state on his own motion that the accuracy of the sources "cannot reasonably be questioned," plaintiff would be forced to prove that judicial notice should be taken in a N.J.R.E. 104 proceeding in which she again would be required to produce an expert. Furthermore, these *522 sources would be required to supply each and every element of expert proof noted earlier. Plaintiff has fallen far short of these standards.
We have been careful in this opinion not to state that there can be no cases in which learned treatises, qualified by judicial notice or by a witness, could satisfy a requirement for expert proof. The hearsay exception could extend the principles of common knowledge or res ipsa loquitur previously defined in Rosenberg by Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985), and Sanzari v. Rosenfeld, 34 N.J. 128, 141, 167 A.2d 625 (1961). Unfortunately for plaintiff in this case, her failure to secure an expert witness to testify concerning the elements of proof noted earlier provided sufficient grounds for the summary judgment entered against her.
Affirmed.
NOTES
[1] We note that at the time of oral argument before the trial judge, June 4, 1992, the Supreme Court had not yet filed its opinion in Jacober v. St. Peter's Medical Center, although the matter had been argued several months before. Jacober was decided by the Supreme Court on July 8, 1992 over three weeks prior to the actual signing and entry of the order dismissing plaintiff's complaint with prejudice.