703 A.2d 980

KIM TYNDALL AND TERRY TYNDALL, HER HUSBAND, PLAIN-
TIFFS–APPELLANTS, v. DR. ZABOSKI, DR. LEDON, AND ST.
ELIZABETH HOSPITAL, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 21, 1997—Decided December 24, 1997.

424

Before Judges DREIER and WECKER.

*Pamela Johnson* argued the cause for appellants (*Drazin & Warshaw*, attorneys; *Paula Sawyer*, on the brief).

*Peter A. Olsen* argued the cause for respondents (*Francis & Berry*, attorneys; *Hugh P. Francis*, of counsel and *Mr. Olsen*, on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

Plaintiffs Kim Tyndall and Terry Tyndall appeal from a summary judgment dismissing their complaint against defendant, Dr. R.F. Ledon [1], a physician who performed a procedure known as endoscopic retrograde cholangio-pancreatography (ERCP) on Kim Tyndall. After undergoing the ERCP, she developed pancreatitis. Kim Tyndall testified at depositions that although she signed a consent form acknowledging generally that the doctor had explained the risks of the procedure and that she understood those

---

[1] Plaintiffs originally named Michael Zaboski, M.D., and St. Elizabeth Hospital as additional defendants. Both were dismissed on motions for summary judgment that are not the subject of this appeal.

risks, he never informed her that pancreatitis was one of those risks. Plaintiffs' complaint was dismissed because they failed to produce an expert report in support of a required element of the informed consent cause of action: that pancreatitis, the condition Kim Tyndall developed within a day after the procedure, was a risk of ERCP that was known to practitioners at the time.[2] We affirm.

On March 15, 1996, as a result of defendant's motion to fix a date certain for production of plaintiffs' expert reports, the court entered an order allowing plaintiffs 90 days to serve such a report. On October 11, 1996, the judge heard argument on defendant's motion for summary judgment. At argument on the motion, the judge told counsel:

> ... in order to avoid summary judgment, you do have to come forward with evidence that, one, this was a known risk. And two, it was a known risk that came to fruition. You can do that by an expert testimony. Or you can do it by an admission by the defendant. You have to have one or the other.

> Are you saying, you think there's an admission in there, but you haven't been able to find it yet ... ?

■ Plaintiffs were represented at argument by an attorney who admitted that he did not know the file but thought the defendant had admitted at his deposition that pancreatitis was a rare but known risk of the procedure. The motion judge gave plaintiffs several days to submit the supporting portions of the deposition transcript, but they were not forthcoming. Instead, plaintiffs' attorney wrote to the court and enclosed what he described as a portion of "Harrison's Principles of Internal Medicine which states that Pancreatitis is a known attendant risk of ERCP." The page enclosed with the letter actually says, with respect to a discussion of ERCP, "Pancreatitis occurs in less than

---

[2] The record before us does not reveal whether Dr. Ledon holds himself out as a specialist in any field, such as gastroenterology or internal medicine generally. That fact is not material to the issue raised by this appeal.

5 percent [3] of patients but is benign and self-limited."

■ The case law is clear. A plaintiff alleging lack of informed consent has the burden of producing expert testimony to establish that the risk cited was one that the defendant should have been aware of because it was known to the medical community at the time. An exception to that rule applies where the defendant concedes that the risk was known, but claims that the patient in fact was informed of that risk. As plaintiffs' attorney apparently discovered, defendant made no such admission.

We addressed virtually the same issue in *Febus v. Barot*, 260 *N.J.Super.* 322, 616 *A.*2d 933 (App.Div.1992). There we affirmed summary judgment for the defendant physician on an informed consent claim because plaintiff failed to produce expert testimony that the surgical complication that she suffered was a "risk . . . of which the physician should have been aware, and that it was recognized within the medical community." *Id.* at 327, 616 *A.*2d 933. The plaintiff in *Febus*, like plaintiff here, relied on *Largey v. Rothman*, 110 *N.J.* 204, 540 *A.*2d 504 (1988) (adopting the "prudent patient" standard for determining whether a risk is material and therefore required to be disclosed) to support the proposition that she did not need an expert to establish a *prima facie* case. That is a mistaken proposition, as we explained in *Febus:*

> [t]he sufficiency of disclosure under the prudent patient standard requires that the disclosure be viewed through the mind of the patient, not the physician. Implicit in this shift of emphasis is the recognition that expert testimony is no longer required in order to establish the medical community's standard for disclosure and whether a physician failed to meet that standard.
>
> In our view, however, the prudent patient standard does not always dispense entirely with the need for expert medical testimony in an informed consent case. *Although, under this doctrine, no medical expert is required to prove that an undisclosed risk would have been material to the patient's consent, it must first be shown that the risk was one of which the physician should have been aware, and that it was recognized within the medical community.*

---

[3] We do not imply that a risk known to occur in five percent of patients does not require disclosure as part of obtaining a patient's informed consent prior to treatment.

[*Febus, supra,* 260 *N.J.Super.* at 327, 616 *A.*2d 933 (emphasis added) ].

And as we further explained,

> ... Largey only shifted the focus of inquiry in determining the materiality of a risk from the doctor's perspective to that of the patient's. It did not alter the rule of *Calabrese [Calabrese v. Trenton State College,* 162 *N.J.Super.* 145, 392 *A.*2d 600 (App.Div.1978) *aff'd,* 82 *N.J.* 321, 413 *A.*2d 315 (1980) ] that proof of a risk recognized by the professional community must come from a qualified expert.
> [*Id.* at 328, 616 *A.*2d 933].

*Accord Frost v. Brenner,* 300 *N.J.Super.* 394, 406, 693 *A.*2d 149 (App.Div.), *certif. denied* 151 *N.J.* 471, 700 *A.*2d 883 (1997); *Caputa v. Antiles,* 296 *N.J.Super.* 123, 134, 686 *A.*2d 356 (App.Div. 1996), *certif. denied,* 149 *N.J.* 143, 693 *A.*2d 112 (1997), ("An expert is required to establish proof of a risk ... recognized by the medical community. . . .") Plaintiffs claim that the motion judge erred by requiring expert testimony and dismissing the case for lack thereof. Much like the plaintiff in *Adamski v. Moss,* 271 *N.J.Super.* 513, 638 *A.*2d 1360 (App.Div.1994), plaintiff chose to proceed solely on the basis of a learned treatise, but without a witness to establish the treatise as authoritative. Agreeing with the plaintiff in *Adamski* "that her claim [was] governed by the learned treatise exception [of *N.J.R.E.* 803(c)(18) ] to the hearsay rule," we nevertheless concluded that

> [t]his rule certainly does not make all reference books admissible as evidence. First, the learned treatise must either be "called to the attention of an expert witness upon cross-examination" or be "relied upon by the expert in direct examination." *Ibid.* The rule thus requires that there must be an expert on the stand either as the party's witness or as an adverse witness being cross-examined. *Tart v. McGann,* 697 *F.*2d 75, 78 (2nd Cir.1982). Second, the particular treatise must be "established as a reliable authority by testimony or by judicial notice." *Ibid.*

> [*Adamski, supra,* 271 *N.J.Super.* at 519–20, 638 *A.*2d 1360.]

*N.J.R.E.* 803(c)(18) includes a learned treatise as one of the exceptions to the hearsay rule, but only under specific conditions:

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by testimony or by judicial notice. If admitted, the statements may not be received as exhibits but may be read into evidence or, if graphics, shown to the jury.

See also *Jacober v. St. Peter's Medical Center,* 128 *N.J.* 475, 608 *A.*2d 304 (1992) (adopting Federal Rule of Evidence 803(18)).

[W]e adopt a new learned-treatise rule that mirrors the federal rule, permitting a text to be qualified as a learned treatise by expert testimony or by judicial notice rather than solely by the cross-examined expert. Moreover, the contents of learned treatises may be introduced as substantive evidence by experts on both direct and cross examination.

[*Id.* at 478, 608 *A.*2d 304].

Thus a learned treatise that is either "established as a reliable authority by testimony or by judicial notice" is admissible as substantive evidence "to the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert in direct examination...." *Id.* As we said in *Canesi by Canesi v. Wilson,* 295 *N.J.Super.* 354, 360, 685 *A.*2d 49 (App.Div. 1996) *certif. granted,* 149 *N.J.* 139, 693 *A.*2d 109 (1997), "a party cannot generally introduce a treatise into evidence as a substitute for expert testimony." *See also Morlino v. Medical Center of Ocean Co.,* 295 *N.J.Super.* 113, 123, 684 *A.*2d 944 (App.Div.1996), *certif. granted,* 149 *N.J.* 34, 692 *A.*2d 47 (1997) (Physicians' Desk Reference is admissible "*along with expert testimony* to determine the appropriate standard of care.")

Even assuming that plaintiff could have persuaded the judge, in a Rule 104(a) hearing, to take judicial notice of the treatise as "a reliable authority," [4] it is plain that in their direct case, and in the absence of their own expert, the proffered statement from the treatise could not meet the rule's second condition: that it either be "relied upon by [an] expert in direct examination," or "upon cross-examination" of defendant's witness. Plaintiffs had no expert to examine on direct, having failed to produce any expert report. As we said in *Adamski, supra,*

We seriously doubt, however, that ... plaintiff could call defendant at trial and establish that the treatise[ ][was] ... "reliable authority through defendant's testimony."

[271 *N.J.Super.* at 520, 638 *A.*2d 1360].

---

[4] Plaintiffs do not contend that the trial judge could have taken judicial notice that pancreatitis is in fact a known risk of the ERCP.

Nor could plaintiffs rely on cross-examination of defendant's witnesses. The failure of plaintiffs' prima facie case would necessarily result in a dismissal under *R.* 4:37–2, and defendant's expert would never have taken the stand.

As the Supreme Court noted in *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 535, 666 *A.2d* 146 (1995),

Analytically, tying the test for summary judgment determinations to the question of what reasonable conclusions a rational jury can draw from the evidence is similar to an involuntary dismissal under *Rule* 4:37–2(b).

There is no reason for the parties or the court to incur the expense and time for trial where the result is virtually certain. *See id.* at 540–41, 666 *A.2d* 146.

We affirm.