772 A.2d 399 (2001)
339 N.J. Super. 467
Jane DARWIN,[1] Plaintiff-Appellant,
v.
Lance L. GOOBERMAN, M.D., and John Doe, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 7, 2001.
Decided March 5, 2001.
*400 Dennis J. Cummins, Jr., Fair Lawn, attorney for appellant.
Stahl & DeLaurentis, attorneys for respondent (Sharon K. Galpern, Mount Laurel, on the brief).
Before Judges KING, LEFELT and AXELRAD.
The opinion of the court was delivered by KING, P.J.A.D.

I
This is a medical-malpractice case in an unusual context. The four-count complaint asserts several theories of liability: negligence and malpractice, lack of informed consent, assault and battery, breach of contract, and product liability. Plaintiff never served an affidavit of merit on defendant pursuant to N.J.S.A. 2A:53A-27. The Law Division judge dismissed plaintiff's complaint because of this default. We affirm as to the dismissal of the negligence, malpractice and lack of professional informed-consent counts; we reverse on the claims based upon assault and battery, breach of contract, and product liability.

*401 II
Plaintiff, Jane Darwin, age 32, alleges in her complaint and certification that she sought treatment for heroin addiction from defendant, Lance L. Gooberman, M.D. She learned of defendant from an advertisement in a newspaper. She contacted defendant, scheduled an appointment, and arrived in his Merchantville, Camden County office on December 17, 1996.
Plaintiff said that defendant and his staff performed no medical tests on her during the appointment and asked for scant medical history. Plaintiff understood the process would "clean out her system and that she would get an opiate blocker, which she thought to be an oral medication." She did not expect the invasive procedure performed. She claimed very little information was offered concerning the procedure she would undergo. She was told of the procedure's success rate and given some admonitions concerning possible discomfort for a few days. She certified:
He did not tell me that they were going to cut into my arm and implant something in my arm. I did not know about that until I woke up and my arm was sore and I saw stitches in my arm.
Although this record is silent as to whether plaintiff signed a written consent form, the second count of her complaint states "she was not sufficiently informed of her legal and medical rights prior to giving her consent for the invasive procedure." Defendant charged plaintiff $2,800 for the procedure, a payment she made by certified check that day, December 17, 1996.
During this December 17th appointment, plaintiff had a naltrexone pellet implanted into her left arm. Her blood pressure was taken and anesthesia administered for the procedure. She was not certain who administered the anesthesia or who implanted the pellet. She thought the pellet would dissolve in her arm in about ten days.
The treatment, known as "Ultra Rapid Opiate Detoxification," is allegedly, as claimed by defendant, a "swift and relatively painless cure for heroin addicts who are anesthetized while drugs cleanse their brain of heroin."
Under rapid opiate detox, a patient is administered several drugs that compress withdrawal from heroin from about 10 days into about four hours, while the patient is under general anesthesia. During that time, the drugs remove opiates from receptors in the brain.
Awakening from the procedure, plaintiff says she experienced nausea and weakness. In her certification, plaintiff related:
My stomach felt like it was on fire; I was dizzy; I could not even stand up on my own. About 15 to 20 minutes after I woke up, I was told to go home even though I felt horrible and was very sick. Several employees took me by wheelchair to my friend's car, picked me up and put me in the car. I could not do it on my own.
Defendant allegedly provided no follow-up instructions other than "syringes with medicine" for her to administer if she suffered diarrhea. Defendant's staff scheduled no follow-up visits for plaintiff but advised her that "future blockers might be necessary at approximately $300 each and if I wanted them I had to come back for them."
Darwin alleges her symptoms worsened, the pellet failed to dissolve, and her arm became severely infected. By telephone, defendant prescribed antibiotics to her pharmacy. However, she remained nauseous, weak, suffered diarrhea, and could not use her arm. Defendant's staff responded to her calls, advising her to give it more *402 time. Plaintiff then visited an emergency room twice and visited her local physician. Ultimately, the undissolved pellet was surgically removed, allegedly leaving lingering infection, pain and scarring.

III
Plaintiff filed her four-count complaint on December 10, 1998, a week before the bar of the statute of limitations. The first count pleads a conventional medical-malpractice negligence action. The second count pleads a lack of informed "consent for the invasive procedure" but also pleads an "assault and battery." The third count states "the plaintiff paid $2800 for the procedure which procedure was not authorized and for which plaintiff is now seeking return of her money [$2800] ... because of breach of contract." The fourth count asserts that "defendant used a product and impliedly warranted that it was both merchantable and fit for the intended use." Plaintiff claims that "later activity showed it was not, that the product's use was not FDA approved."
We construe the second count as a hybrid of lack of informed consent and assault and battery. We construe the third count as a breach-of-contract claim and the fourth count as a product-liability claim. As noted, we affirm in part and reverse in part.

IV
Defendant moved to dismiss on September 29, 1999 for failure to serve an affidavit of merit. Plaintiff's counsel filed his own certification with his brief of October 18, 1999 in response to defendant's motion in support of his claim of "extraordinary circumstances," excusing the need for an affidavit of merit. Counsel attached photocopies of October 1999 newspaper articles from The New York Times, The Bergen Record, and The Philadelphia Inquirer to his certification. The articles referred to a complaint filed by the Attorney General against defendant as a dangerous individual who rendered poor outpatient care.
One Inquirer article explained, "[t]he State is seeking civil penalties and to revoke or suspend both doctors' [Gooberman's and his associate's] medical licenses." According to this Inquirer article, the State Board of Medical Examiners alleged:
[P]atients were not advised of potentially fatal risks involving the procedure and were given inadequate aftercare. The complaint also charged Gooberman and [his associate], who assisted him, were not qualified to perform procedures that should have been done by qualified anesthesiologists.
The articles referred to defendant as "the only doctor in New Jersey, and his clinic was one of only two or three in the New York metropolitan region, to offer the treatment." The articles reported six deaths within five years from his controversial treatment, "all within hours or days of their treatment." The State's complaint alleged that all six deaths "`were either directly or indirectly caused' by the procedure or the lack of treatment or aftercare." Defendant's attorney denied the allegations, stating "no one had sued [defendant] over the procedure." His attorney did acknowledge two suits filed against him relating to the pellet implant.
The newspapers described the procedure, rapid detoxification, as
anesthetizing patients and injecting them with drugs known as opiate antagonists.... To conclude the four- to six-hour procedure, Dr. Gooberman surgically imbedded a pellet in the patient's abdomen that, as it dissolved over two *403 months, released a drug, naltrexone, which blocks opiates in the bloodstream.
....
The complaint says the pellets are not approved by the Food and Drug Administration, but Dr. Gooberman defended their use as legal.
The New York Times article of October 14, 1999 reported defendant entered into a consent order which required new treatments be performed "only in a hospital, and only with prior approval from state officials." The Philadelphia Inquirer in October 1999 reported:
The agreement permits Gooberman to continue implanting and advertising the pellets but requires him to inform patients that the U.S. Food and Drug Administration has not approved the use of naltrexon in pellet form. The agency approved its use as a pill in 1994.
In his brief, defendant distinguishes between his Rapid Opiate Detoxification (ROD) procedure, complained about by the Attorney General, and his "subcutaneous use of Naltrexone pellets" which he claims are not the subject of the State's complaint. Defendant says he has applied for FDA approval of naltrexone in pellet form. He admitted his patients must be informed the FDA has yet to approve them. United States Patent No. 5,789,411 was granted to defendant for improvements made to the Rapid Opiate Detoxification (ROD) procedure. The patent's abstract explains:
Rapid opioid detoxification procedures are provided which include sedating a patient with an anesthetic agent having a short full recovery period. The patient is administered an opioid antagonist while sedated and can be revived to an ambulatory condition within eight hours of initiating therapy. The described methods for detoxification also include administering a diarrhea suppressant such as octreotide acetate to limit this unfortunate side effect of the detoxification.
The patent described in detail the specifics of the invention, including a suggested protocol:
At the initial office visit, a staff member conducts a biopsychosocial interview. At this time, the procedure is explained in depth along with a description of what to expect after detoxification is complete. The importance of group therapy and a support person following therapy is explained to the patient.
A complete history and physical examination is conducted, with a particular attention directed to prior difficulties with anesthesia on the part of the patient or his or her family. In addition, the arms and legs of the patient should be inspected for adequate venous access. An informed consent form is reviewed and executed and warnings are given concerning what the patient should expect from the procedure.
Sedation is induced with a "rapid sequence induction of anesthesia, in combination with a rapid-acting, intravenous anesthetic agent" such as propofol. The patient is then given an "inexpensive paralytic agent" to decrease vomiting. This requires ventilation "since it is necessary to breathe for the patient." The patient is intubated to protect the airway and prevent aspiration of vomitus. Along with intubation, a nasogastric tube is inserted into the stomach to permit introduction of the naltrexone. The physician then initiates "withdrawal" with administration of an IV of naloxone. Ideally, three to four hours later the patient becomes "fully detoxed" and receives a maintenance dose, perhaps by pellet implant, which permits time-released delivery of a therapeutic dose. An anti-diarrheal medication and potassium may be *404 injected to counter negative effects, then paralysis is reversed, and the propofol ended. Post-procedure counseling supplements the effects of the drug. The State's action against defendant's medical license is presently being heard in the State Board of Medical Examiners and the Office of Administrative Law.
On October 22, 1999 the Law Division judge heard oral argument on defendant's motion to dismiss and went to the heart of the problem: "under 2A:53A-26, the plaintiff, and I think it's uncontroverted, did not file an affidavit of merit." Plaintiff's counsel argued the uniqueness of the situation and the nature of plaintiff's claim against the defendant as justification for not filing an affidavit of merit under N.J.S.A. 2A:53A-27.
[I]n the sense that we have the Attorney General on behalf of the State Medical Board alleging 21 areas of malpractice, one of which is having to do with informed consent. There is an acknowledgment herethere is an allegation herethat we were never told that this procedure was not approved by the FDA.
Counsel suggested that liability was a matter of common knowledge.
Plaintiff also relied on the newspaper articles about defendant Gooberman as evincing "widespread publicity in addition to an inquiry by the State Medical Board as to the Defendant's procedures that were used here on the Plaintiff." Plaintiff claims she neither "planned nor could she afford expert testimony," instead electing to rely upon the "publicly announced information that the Defendant's procedure lacked official and medical community approval."
Plaintiff wished to rely on the findings of the Attorney General's office, "[b]ecause you have a theory in New Jersey that that if there is a regulation that addresses a standard and that standard is there for the protection of a particular class, then violation of that standardthat regulation is negligence per se." Plaintiff offered three justifications for an exception to the statute, N.J.S.A. 2A:53A-27: (1) res ipsa loquitur; (2) reliance upon the Attorney General's complaint and finding as a matter of public information and pertinent regulations designed for the plaintiff's protection and in the public domain; and (3) under Hyman Zamft and Manard v. Cornell, 309 N.J.Super. 586, 592, 707 A.2d 1068 (App.Div.1998), an extension for discovery should be permitted. Defendant, in opposition, contended that plaintiff needed an expert's affidavit to prove anything, including absence of informed consent and res ipsa loquitur, relying on Hubbard v. Reed, 331 N.J.Super. 283, 751 A.2d 1055 (App.Div.), certif. granted, 165 N.J. 527, 760 A.2d 781 (2000), and Tyndall v. Zaboski, 306 N.J.Super. 423, 703 A.2d 980 (App. Div.1997), certif. denied, 153 N.J. 404, 709 A.2d 797 (1998).
With no affidavit of merit and no viable request for an extension to file one, the judge dismissed all counts. The judge declined to accept the newspaper articles as justification for relaxing the statutory requirement, even assuming they were accurate and truthful. In rejecting plaintiff's position, the judge stated,
You've got a bold allegation as a basis of complaint, and you want me to consider that in order to get around your duty under 2A:53A-27 to file an affidavit of merit.... The law is clear ....since the affidavit was not filed, unless you can apply for an extension within the 60-day period, which wasn't done, there is no basis for this Court to allow your client to proceed in this case.
It is a medical procedure. Whether you think it's good or bad can only be determined by an expert. And that expert *405 has to give his name and his opinion in advance. That's what the whole legislative intent behind that statute was, Mr. Cummins.
The judge also rejected plaintiff's request for an additional sixty days to complete discovery because plaintiff failed to meet her obligation "to file [her] theory of negligence for malpractice within 60 days of the answer to the complaint."

V
N.J.S.A. 2A:53A-27, entitled Affidavit required in certain actions against licensed persons, states:
In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause. The person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.
[N.J.S.A. 2A:53A-27, L.1995, c. 139, § 2 (emphasis supplied).]
If the plaintiff fails to provide an affidavit, this is deemed a failure to state a cause of action. N.J.S.A. 2A:53A-29. The statute became effective on June 29, 1995, L. 1995, c. 139, § 5.
Defendant discusses and relies upon recent case law, including Hubbard v. Reed, 331 N.J.Super. 283, 751 A.2d 1055 (App. Div.), certif. granted, 165 N.J. 527, 760 A.2d 781 (2000). In Hubbard, Judge Braithwaite wrote,
We hold that an affidavit of merit is required in a common knowledge or res ipsa loquitur case and now affirm. In so doing, we overrule the holding in Janelli v. Keeper [, 317 N.J.Super. 309, 721 A.2d 1036 (Law Div.1998)] [Id. at 287, 721 A.2d 1036.]
In so holding, he ruled that failure to comply with N.J.S.A. 2A:53A-27 and 2A:53A-28 "shall be deemed a failure to state a cause of action." Id. at 290, 751 A.2d 1055, citing N.J.S.A. 2A:53A-29. He referred to the "clear statutory requirement of N.J.S.A. 2A:53A-27" to require an affidavit of merit in "all malpractice cases regardless of the method of proving the claim." Id. at 291, 751 A.2d 1055. Lacking ambiguity in the "mandatory language of N.J.S.A. 2A:53A-27," the judge wrote "[t]o construe N.J.S.A. 2A:53A-27 so that it does not apply to common knowledge cases is to `read out an express provision' of the statute. Delaware River Port Auth. v. Hughes, 46 N.J. 451, 455, 217 A.2d 865 (1966). This a court may not do." Ibid.
Here, the plain meaning of the statute evidences the legislative intent. The specific language used by the Legislature compels the conclusion that the affidavit of merit statute applies to common *406 knowledge cases, and the legislative purpose of the statute compels a similar result.
Our Supreme Court has addressed the purpose of the statute, stating that "[t]he overall purpose of the statute is `to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation.'" Cornblatt, 153 N.J. at 242, 708 A.2d 401 (citing In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d 81 (1997)). Given this purpose, the affidavit of merit statute serves a gate-keeping function so that only those cases that meet a threshold of merit proceed through the litigation stream.
[Hubbard, 331 N.J.Super. at 291-92, 751 A.2d 1055.]
Judge Braithwaite found the specific means a plaintiff selects to prove his claim irrelevant to the statutory mandate which requires plaintiffs to meet "a threshold of merit" early in litigation. Id. at 292, 217 A.2d 865. Failure to comply with this mandate leads to the "plaintiff, or plaintiff's counsel, [ ] attesting to the merit of the claim. The Legislature clearly did not intend such a result" and it fails to state a cause of action pursuant to N.J.S.A. 2A:53A-29. Ibid. The legislative purpose seeks to eliminate "meritless claims early in the litigation." Ibid. We held that "[o]nly the `affidavit of an appropriate licensed person' satisfies the merit requirement." Id. at 293, 217 A.2d 865, citing N.J.S.A. 2A:53A-27. Hence, production of an affidavit of merit and "the method a plaintiff intends to use to prove his or her claim" can be distinguished. Ibid.
Since a particular plaintiff may press for good faith exceptions to the statute, Judge Braithwaite also addressed this issue, pointing out:
The Legislature considered the need for exceptions, and specifically provided for one, but did not supply a common knowledge exception.
The exception to the requirement for an affidavit of merit is found in N.J.S.A. 2A:53A-28.
No affidavit of merit shall be required if the plaintiff files a sworn statement certifying (1) that the plaintiff, by certified mail or personal service, requested the defendant in question to deliver medical records or information having a substantial bearing on preparation of the affidavit and enclosed an authorization for release of the records, and (2) that the defendant failed to deliver the requested records or information notwithstanding the passage of forty-five days since service of the request.
[Id. at 295-96, 217 A.2d 865, citing In re Petition of Hall, 147 N.J. 379, 390, 688 A.2d 81 (1997).]
Because the statute explicitly provides its own exceptions, the court was reluctant to "imply another," judicially. Id. at 296, 217 A.2d 865.
Defendant also relies upon Tyndall v. Zaboski, 306 N.J.Super. 423, 426, 703 A.2d 980 (App.Div.1997), certif. denied, 153 N.J. 404, 709 A.2d 797 (1998) (holding informed-consent cases require expert testimony absent an admission by defendant). Likewise, defendant relies on Tyndall, concerning the use of learned treatises under N.J.R.E. 803(c)(18), and Canesi by Canesi v. Wilson, 295 N.J.Super. 354, 360, 685 A.2d 49 (App.Div.1996), certif. granted, 149 N.J. 139, 693 A.2d 109 (1997), aff'd in part, rev'd in part, 158 N.J. 490, 730 A.2d 805 (1999); Adamski v. Moss, 271 N.J.Super. 513, 638 A.2d 1360 (App.Div.1994), as requiring an expert witness in conjunction with so-called authoritative articles. Tyndall, 306 N.J.Super. at 428, 703 A.2d 980.
*407 Plaintiff relies upon Matthies v. Mastromonaco, 160 N.J. 26, 733 A.2d 456 (1999), to support her position that she need not offer expert testimony to claim lack of informed consent. From that premise, plaintiff infers she need not furnish any affidavit of merit. We reject this thesis as to informed consent which doctrine depends on the exercise of medical judgment.
In his discussion in Matthies, Justice Pollock stated "that New Jersey's doctrine of informed consent is based not on battery, but on negligence, [and] the court concluded that the doctrine applies to noninvasive, as well as invasive, procedures." Matthies, 160 N.J. at 33, 733 A.2d 456. In Matthies, acknowledging "the ultimate decision" for treatment resides with the patient, Justice Pollock discussed the majority of jurisdictions' move away from the battery theory of lack of informed consent, opting to view informed consent as "deriving from the right of self-determination." Id. at 34, 733 A.2d 456.
Most jurisdictions view the failure to obtain a patient's informed consent as an act of negligence or malpractice, not battery. See, e.g., Joan P. Dailey, The Two Schools of Thought and Informed Consent Doctrines in Pennsylvania: A Model For Integration, 98 Dick. L.Rev. 713, 727-28 & n. 101 (stating battery basis recognized in only minority of jurisdictions, for example, Georgia, Pennsylvania, and Virginia); Paula Walter, The Doctrine of Informed Consent: To Inform or Not To Inform?, 71 St. John's L.Rev. 543, 543, 558-59 (1997) (noting that two 1980 cases moved informed consent doctrine of New York, one of few remaining battery jurisdictions, toward theory of negligence).
The rationale for basing an informed consent action on negligence rather than battery principles is that the physician's failure is better viewed as a breach of professional responsibility than as a nonconsensual touching. Baird v. American Med. Optics, 155 N.J. 54, 70-71, 713 A.2d 1019 (1998); Largey v. Rothman, 110 N.J. 204, 207-08, 540 A.2d 504 (1988). As we have stated, "Informed consent is a negligence concept predicated on the duty of a physician to disclose to a patient information that will enable him to `evaluate knowledgeably the options available and the risks attendant upon each' before subjecting that patient to a course of treatment." Perna v. Pirozzi, 92 N.J. 446, 459, 457 A.2d 431 (1983); see also Kaplan v. Haines, 96 N.J.Super. 242, 257, 232 A.2d 840 (App. Div.1967), aff'd o.b., 51 N.J. 404, 241 A.2d 235 (1968) (sanctioning negligence-view, lack-of-informed-consent tort twenty years prior to Largey). Analysis based on the principle of battery is generally restricted to cases in which a physician has not obtained any consent or has exceeded the scope of consent. [Citation omitted.] The essential difference in analyzing informed consent claims under negligence, rather than battery principles, is that the analysis focuses not on an unauthorized touching or invasion of the patient's body, but on the physician's deviation from a standard of care.
[Id. at 35-36, 733 A.2d 456.]
In affirming our court's reversal of the jury's verdict for defendant, Justice Pollock stated,
Like the deviation from a standard of care, the physician's failure to obtain informed consent is a form of medical negligence. See Baird, supra, 155 N.J. at 70, 713 A.2d 1019; Teilhaber v. Greene, 320 N.J.Super. 453, 457, 727 A.2d 518 (App.Div.1999).
[Id. at 29, 39, 733 A.2d 456.]
The Court similarly remarked that "[t]he issue of informed consent often intertwines with that of medical malpractice." Id. at *408 40, 733 A.2d 456, citing Baird, 155 N.J. at 70-71, 713 A.2d 1019.

VI
We conclude that the judge was correct in dismissing those portions of the complaint which asserted liability against defendant for professional negligence or malpractice. N.J.S.A. 2A:53A-27 clearly requires this result, no matter what the possible potential merit of plaintiff's claim. The statute was designed to prevent meritless or frivolous claims. Hubbard v. Reed, 331 N.J.Super. at 292, 751 A.2d 1055; "Burns v. Belafsky, 166 N.J. 466 [474] 766 A.2d 1095 [2001]." The "affidavit-of-merit" device is the filter. The expert's affidavit need not be detailed or analytical but may be "summary in nature." See Petition of Hall, 147 N.J. 379, 392, 688 A.2d 81 (1997). Without statutory compliance, the bad and the good claims are swept away, peremptorily.
We do not think an affidavit of merit is required for the assault-and-battery, breach-of-contract, and product-liability claims. These are not claims for breach of professional responsibility, or which involve a "physician's deviation from a standard of care," or sound medical judgment. Matthies v. Mastromonaco, 160 N.J. at 35-36, 733 A.2d 456. Insofar as plaintiff claims an assault-and-battery, "an unauthorized touching or invasion of the patient's body," id. at 36, 733 A.2d 456, and not a "deviation from a standard of care," plaintiff does not need an affidavit of merit. Ibid. If plaintiff simply asserts that the doctor failed to adequately "present[ ] the material facts so that the patient can make an informed decision," ibid., this asserts a malpractice claim, not an assault-and-battery claim. The failure to fully inform the patient of risks and options is professional fault, not assault. Invading a patient's body without any colorable type of consent or authorization, is an unlawful assault, and beyond the contemplation of N.J.S.A. 2A:53A-27.
R. 4:5-7 requires that "[a]ll pleadings shall be liberally construed in the interest of justice." See Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 75-76, 577 A.2d 1239 (1990) (affording "every favorable inference" to plaintiff's facially-deficient complaint); DiCristofaro v. Laurel Grove Memorial Park, 43 N.J.Super. 244, 252, 128 A.2d 281 (App.Div.1957) ("First, it is to be noted that on such a motion as this one which, if successful, means sudden death to the actionthe court searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary."). Under this principle, not all of plaintiff's complaint fails the attack by the affidavit-of-merit statute.
On this record, we do not know if defendant obtained any kind of consent to proceed, either written or oral. If in defense, the defendant establishes he had some form of colorable consent to proceed with the treatment, then any claim for professional negligence in obtaining such consent already has been dismissed for non-compliance and perforce fails. If the defendant had no consent at all to proceed, this is an assault-and-battery case, not a negligence case, with no affidavit needed under N.J.S.A. 2A:53A-27. Finally, we conclude the statute plainly does not apply to breach-of-contract or product-liability cases. We offer no view on whether or not expert testimony is required on these counts to prevail. We hold only that a N.J.S.A. 2A:53A-27 affidavit of merit is not required in such cases.
*409 We affirm dismissal of the complaint's Count One (negligence); Count Two (informed-consent aspect); we reverse as to the dismissal of Count Two (intentional assault and battery without colorable consent); Count Three (breach of contract); and Count Four (product liability).
Affirmed in part; reversed in part.
NOTES
[1] This is a fictitious name to protect the plaintiff who is a recovering addict.