690 A.2d 150

VICTORIA LOMBARDO, PLAINTIFF-APPELLANT, v. DR. MARTIN BORSKY AND ST. PETER'S MEDICAL CENTER, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 25, 1997—Decided March 20, 1997.

Before Judges PRESSLER, STERN and HUMPHREYS.

*Richard Galex* argued the cause for appellant (*Galex, Tortoreti* and *Tomes,* attorneys; *Mr. Galex,* on the brief).

*Jeremy P. Cooley* argued the cause for respondent Dr. Martin Borsky (*Lenox, Socey, Wilgus, Formidoni & Casey,* attorneys;

*Rudolph A. Socey, Jr.*, of counsel;  *Mr. Cooley* and *James J. Breslin, III*, on the brief).

Respondent St. Peter's Medical Center did not file a brief.

The opinion of the court was delivered by

STERN, J.A.D.

Plaintiff appeals from an order dismissing her complaint against defendants, Martin Borsky, M.D., and St. Peter's Medical Center, alleging the failure to obtain informed consent before Dr. Borsky implanted an experimental intraocular lens into plaintiff's right eye.[1]  The order was entered after a *"Lopez* hearing."  *See Lopez v. Swyer,* 62 *N.J.* 267, 300 *A.*2d 563 (1973).  The trial judge "concluded that as of January 1988 at the latest, the plaintiff was aware of sufficient facts which would alert a reasonable person that the conduct of third parties had caused or contributed to her injuries and that said third parties might be at fault."  As a result, the judge dismissed the action which was filed on May 24, 1991, because "plaintiff did not file suit within the applicable period of time and that the Statute of Limitations was not tolled beyond January 1988."[2]

It was undisputed for purposes of the motion for summary judgment that in March 1982 Dr. Borsky, an ophthalmologist, implanted a Surgidev Leiske Style 10 intraocular lens into plaintiff's right eye.  For purposes of this appeal and to give defendants the benefit of all legitimate inferences, we will incorporate

---

[1] Application of the "informed consent" doctrine to a hospital in New Jersey is presumed by the parties appearing before us and not contested on this appeal. The hospital has not appeared, and we do not address or pass upon the issue.

[2] Actually, the original complaint was filed against Surgidev Corporation which manufactured the intraocular lens implanted by Dr. Borsky in plaintiff's right eye in 1982.  Defendants were first named in plaintiff's second amended complaint filed on May 24, 1991 pursuant to an order of May 17, 1991 authorizing same.  The plaintiff settled her case with Surgidev Corporation and a stipulation of dismissal was filed.

662

Borsky's recitation in his appellate brief of the facts developed at the *Lopez* hearing:

> Plaintiff testified that shortly after the plaintiff's surgery she experienced consequences which were unexpected because Dr. Borsky had never told her of them. After Dr. Borsky's surgery, she expected no pain in the eye but had pain. She expected no worsening of her vision but her vision got worse right after the surgery. It continued to get worse and never got better. This development of unexpected problems began her suspicion that the lens and the surgery Dr. Borsky had performed had caused her injury, the possibility of which he had never warned her.
>
> In 1985 Mrs. Lombardo travelled to New York City to see Dr. Dunn and Dr. Cotliar, two eye physicians. At the doctors' office in New York City the plaintiff's initial suspicions were confirmed and plaintiff was told she was blind by Dr. Dunn and was told the lens implanted by Dr. Borsky was cutting into her cornea. This was another unexpected complication which had never been warned of by Dr. Borsky.
>
> In 1987 Mrs. Lombardo went to Wills Eye Hospital and saw Dr. Kane and Dr. Laibson. During these examinations she was told that the lens implanted by Dr. Borsky should be removed from the eye because the cornea was being damaged by the lens. Dr. Kane also told her that day the lens implanted by Dr. Borsky was the wrong size because it was too small. As a result of these conversations with the doctors in New York and Philadelphia and her own reasoning as to the development of these significant, unexpected and unwarned of complications by Dr. Borsky, she concluded that Dr. Borsky's operation had caused her the post-operative pain and caused the lens to cut into her cornea. In addition to concluding that his operation had caused her these injuries, she concluded Dr. Borsky had not done something right during his surgery. Mrs. Lombardo testified she thought Dr. Borsky did something wrong because she could not see out of her eye after he got done with her. She came to this conclusion after she first developed ulcers, which was before she saw Dr. Laibson in 1987.
>
> Although Mrs. Lombardo returned to Dr. Borsky's care in 1988 after Dr. Laibson's surgery, she unwaveringly continued to believe that he had done something wrong to cause her injury. When she returned to him she did not trust and she did not ask him as to whether he had done anything wrong. Thus, during the continuing care after she returned to him, he did not say anything about the surgery and the cause of her injuries, and did nothing to mislead her or change her thinking regarding the cause of her injury.

[ (Record citations omitted.) ]

The trial judge believed the issue before him related to "when the plaintiff found information which reasonably could have lead [*sic*] her to believe that she had a cause of action against the doctor for failure to tell her about the risks of the lens." The judge concluded:

It's my determination that at the latest she became aware of that in January of 1988 when she concluded that or believed that the lens she had was defective and that the doctor had not told her about any risks from this defective lens and that the injury she was suffering was being caused by the lens and by extension the doctor's failure to tell her about it or failure to do something properly. I don't accept that may not have been enough if I believed that Dr. Borsky then undertook a course of trying to explain to her that this was not her problem and that all it was was the lens slipping rather than being defective. I can't really tell that Dr. Borsky kept telling her that or not but it was clear that she was only going back to Dr. Borsky, at least in my opinion, because Dr. Laibson was sending her back to Dr. Borsky, that she was sent back to him. She by this time I don't believe had much faith in him but nevertheless was going back because the doctor in Pennsylvania was telling her to go back there and he was her doctor and she would have to go there so she did go back there. I don't believe that she believed anything from him at that time which would cause her to believe that her injury was something other than what he may have done. Under the circumstances or as the facts as I find them to be based on the testimony here, as I say, I don't believe I have any alternative other than to dismiss the plaintiff's complaint.

Plaintiff expressly advised us at oral argument that her claim against Dr. Borsky (and derivatively against the hospital—she used the term "vicarious[ly]" before the trial judge) is based "exclusively" on the doctrine of "informed consent based on [the failure of Dr. Borsky to advise plaintiff that he was implanting] an experimental lens." While plaintiff told the trial judge that "the claim that's being presented in this case is lack of informed consent," her second and third amended complaints containing the allegations against Dr. Borsky and the hospital were not so limited.

In light of plaintiff's present position, the issue before us is not when a cause of action accrued against Dr. Borsky with respect to a medical malpractice case. Nor is it whether, at the time this complaint was filed, plaintiff could have brought a cause of action against Dr. Borsky for conduct other than his failure to obtain informed consent. The "informed consent" cause of action is premised on Dr. Borsky's failure to advise plaintiff that he was implanting an experimental or "investigational" lens pursuant to a program approved by the Federal Food and Drug Administration for purposes of testing the intraocular lens. Plaintiff did not have to commence a malpractice action against Dr. Borsky even if there

was a basis for so doing as a result of the implantation and treatment, and the issue before us, irrespective of whether or not other causes of action had accrued earlier, is only whether this cause of action for lack of informed consent is time barred.

Defendant insists that the trial judge properly determined that plaintiff was aware by January 1988 that she had a serious eye problem and was also aware that it was caused by the lens implanted by Dr. Borsky. Defendant also asserts that no later than January 1988 "Mrs. Lombardo had sufficient information to lead a reasonable person to conclude that the injuries she suffered resulted from a defective lens and that [Dr. Borsky] had not told her of any risks from these defective lens." He therefore contends that the complaint was properly dismissed because it was filed more than two years after the cause of action accrued. *See* *N.J.S.A.* 2A:14–2. Defendant also contends that once the plaintiff had "notice of any claim" against a particular defendant, that plaintiff "must investigate all of those claims and the statute of limitations runs as to all."

In *Largey v. Rothman,* 110 *N.J.* 204, 540 *A.*2d 504 (1988), the Supreme Court held that the appropriate standard for determining whether a physician obtained a patient's informed consent was that of the objectively "prudent patient." 110 *N.J.* at 212, 215, 540 *A.*2d 504. Under that approach the critical question is whether the doctor gave the patient information which a reasonably "prudent patient" would find material in selecting a course of treatment. *Id.* at 211–12, 540 *A.*2d 504. The theory of informed consent does not flow from medical malpractice itself, but from the failure to advise the patient thereby resulting in a "battery" on the person. *Perna v. Pirozzi,* 92 *N.J.* 446, 460, 457 *A.*2d 431 (1983); *Skripek v. Bergamo,* 200 *N.J.Super.* 620, 491 *A.*2d 1336 (App.Div.), *certif. denied,* 102 *N.J.* 303, 508 *A.*2d 189 (1985).[3] The real issue

---

[3] The plaintiff also has to prove proximate cause, that is " 'that the prudent person in the patient's position would have decided differently if adequately

before us, therefore, is whether the cause of action for performing the implantation without informed consent is barred by the running of a statute of limitation for causes of action which might otherwise have accrued previously for malpractice or negligence related to that treatment.

There is no dispute before us, and defendant candidly acknowledges, that a *"Lopez* hearing" was required to determine when the cause of action accrued and that the proofs thereat reflect that Ms. Lombardo had no knowledge that an experimental or investigational lens was implanted until at least late 1990 when a member of her family read about the results of some studies relating to the implantation of similar experimental lenses.[4]

In *Lopez* our Supreme Court held "that whenever a plaintiff claims a right to relief from the bar of the statute of limitations by virtue of the so-called 'discovery' rule, the question as to whether such relief is properly available shall be deemed an issue for determination by the Court rather than the jury." *Lopez, supra,* 62 *N.J.* at 272, 300 *A.*2d 563. "The discovery rule is essentially a rule of equity" developed "as a means of mitigating the often harsh and unjust results which flow from a rigid and automatic adherence to a strict rule of law." *Id.* at 273–74, 300 *A.*2d 563. At the *Lopez* hearing, "[t]he issue will be whether or not a party, either plaintiff or counterclaimant, is equitably entitled to the benefit of the discovery rule." *Id.* at 275, 300 *A.*2d 563.
The determinative factors may include but need not be limited to: the nature of the alleged injury, the availability of witnesses and written evidence, the length of time

informed.' " *Id.* at 215, 678 *A.*2d 243; *Skripek, supra,* 200 *N.J.Super.* at 629–30, 491 *A.*2d 1336.

4 Our reading of the record reveals no express testimony regarding when the article was discovered. Plaintiff testified that her children pointed it out to her. Plaintiff and a daughter testified it was noted to the doctor at the next appointment or the one thereafter, and that he then terminated the relationship. As a result of the dates of the appointments, there is no dispute about when the article was found or what it was about, although the subjects were not developed in detail at the hearing.

that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, whether the delay may be said to have peculiarity or unusually prejudiced the defendant. The burden of proof will rest upon the party claiming the indulgence of the rule.

[*Id.* at 276, 300 A.2d 563.]

The Supreme Court has also held that "the discovery rule centers upon an injured party's knowledge concerning the origin and existence of his injuries as related to the conduct of another person." *Lynch v. Rubacky,* 85 *N.J.* 65, 70, 424 A.2d 1169 (1981). Thus, "when a party is either unaware that he has sustained an injury or, although aware that an injury has occurred, he does not know that it is, or may be, attributable to the fault of another, the cause of action does not accrue until the discovery of the injury or facts suggesting the fault of another person." *Tevis v. Tevis,* 79 *N.J.* 422, 432, 400 A.2d 1189 (1979). As a result, "[t]he discovery principle modifies the conventional limitations rule ... to the extent of postponing the commencement of accrual of the cause of action until plaintiff learns, or reasonably should learn, the existence of that state of facts which may equate in law with a cause of action," although not "the state of the law positing a right of recovery upon the facts." *Burd v. New Jersey Tel. Comp.,* 76 *N.J.* 284, 291–92, 386 A.2d 1310 (1978). Hence, the statute of limitations does not begin to run until the injured party is aware "of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct *may* have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care." *Savage v. Old Bridge–Sayreville Med. Group,* 134 *N.J.* 241, 248, 633 A.2d 514 (1993).

In *Abboud v. Viscomi,* 111 *N.J.* 56, 543 A.2d 29 (1988), the Supreme Court reversed a dismissal and remanded for a *Lopez* hearing where a patient did not file a complaint because she remained under defendant's care although plaintiff suspected defendant had done something wrong, and may have been induced not to file a complaint even after she discontinued his services. The Court emphasized the need for the trial judge to evaluate the

equities of the claim that the suit was time barred. *Id.* at 63–65, 543 *A.*2d 29; *see also Lynch, supra,* 85 *N.J.* at 74–75, 424 *A.*2d 1169 (finding it was inequitable to find that the plaintiff should have suspected malpractice because of plaintiff's mere dissatisfaction with her treatment or sense that something was wrong); *Graves v. Church & Dwight Co.,* 225 *N.J.Super.* 49, 56–57, 541 *A.*2d 725 (App.Div.), *aff'd,* 115 *N.J.* 256, 558 *A.*2d 463 (1989) ("[i]t was for the physicians to make the connection" that "injury [was] caused by defendant's product," and until that was done the cause of action did not accrue).

It may well be, as defendant contends, that had plaintiff brought a malpractice action against Dr. Borsky in 1988, she could not subsequently have filed the present complaint once the action had been disposed. *See Prevratil v. Mohr,* 145 *N.J.* 180, 678 *A.*2d 243 (1996). But here there was no prior action, and we are concerned exclusively with the single action that plaintiff has filed. We are cited to no case, and can find none as a result of our independent research, barring plaintiff's "informed consent" cause of action which did not accrue until at least late 1990, merely because another cause of action accrued earlier or because plaintiff earlier had the requisite information to file a complaint against defendants on some other theory. The equities simply do not permit dismissal of her informed consent complaint when there is no contention she earlier knew or reasonably should have known the implanted lens was experimental.

Before us Dr. Borsky's counsel candidly acknowledges that plaintiff's testimony indicated she did not learn the lens was experimental before late 1990 or early 1991, that the judge did not find her incredible in this regard, and that counsel has no basis for suggesting that she knew earlier. As a result, we reverse the dismissal of plaintiff's complaint filed in May 1991 against defendants, and remand for further proceedings on the claim of informed consent.

Reversed.