710 A.2d 1023 (1998)
311 N.J. Super. 567
Sylvia BENNETT, Plaintiff-Appellant,
v.
SURGIDEV CORPORATION, Theodore F. Pearlman, M.D., and St. Clare's/Riverside Hospital, Defendants-Respondents, and
Larry G. Leiske, M.D. XYZ Companies # 1 through # 5, John Does # 1 through # 5, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued November 18, 1997.
Decided May 15, 1998.
*1024 Richard Galex, for plaintiff-appellant (Galex, Tortoreti and Tomes, East Brunswick, attorneys; Mr. Galex, on the brief).
Jeremy P. Cooley, Trenton, for defendant-respondent Theodore F. Pearlman, M.D. (Lenox, Socey, Wilgus, Formidoni & Casey, attorneys; Mr. Cooley and Nancy C. Fletcher, on the brief).
Sachs, Maitlin, Fleming, Greene & Wilson, West Orange, for defendant-respondent St. Clare's/Riverside Medical Center, join in the brief of defendant-respondent Theodore F. Pearlman.
Before Judges LONG, KLEINER and KIMMELMAN.
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiff, Sylvia Bennett, appeals from the grant of summary judgment to defendants, Theodore Pearlman, M.D. and St. Clare's Riverside Hospital,[1] on plaintiff's complaint *1025 alleging that on September 22, 1982, plaintiff "submitted herself to the medical care and attention of [defendant] for the purpose of cataract removal and intraocular lens implant" and that "defendant was careless and negligent" because "he failed to advise the plaintiff that the lens which he intended to insert into plaintiff's eye ... had not been approved by the Food & Drug Administration for any use other than investigational...." Plaintiff's complaint also asserted that defendant "failed to advise [her] of choices that were available in terms of operative procedure, including procedures which would have allowed the use of a posterior chamber lens reducing the risk of injury...."
The implantation of an intraocular lens in cataract surgery was first discussed in New Jersey in a reported decision in Lombardo v. Borsky, 298 N.J.Super. 658, 690 A.2d 150 (App.Div.), certif. granted, 150 N.J. 28, 695 A.2d 671 (1997), appeal dismissed, 153 N.J. 44, 707 A.2d 149 (1998), decided after the trial judge's decision in this case. In Lombardo, the defendant Dr. Borsky, an ophthalmologist, implanted a Surgidev Leiske Style 10 intraocular lens into plaintiff's right eye in March 1982. Id. at 661, 690 A.2d 150. The plaintiff's complaint was premised solely on the failure of Dr. Borsky to obtain her informed consent prior to the 1982 surgery. Ibid. The trial judge conducted a Lopez hearing, pursuant to Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973), after which this court noted that "[t]he trial judge believed the issue before him related to `when the plaintiff found information which reasonably could have lead [sic] her to believe that she had a cause of action against the doctor for failure to tell her about the risks of the lens.'" Id. at 662, 690 A.2d 150. The trial judge concluded that the plaintiff knew her lens was defective, at the latest, in January 1988, and thus her complaint filed on May 24, 1991, was untimely filed and barred by the two-year statute of limitations, N.J.S.A. 2A:14-2. Id. at 663, 690 A.2d 150.
Although the plaintiff in Lombardo was certainly aware in 1988, at the latest, that there was something wrong with the intraocular lens Dr. Borsky had implanted in her eye in March 1982, see id. at 662, 690 A.2d 150, this court reviewed the testimony presented at the Lopez hearing and concluded:
Before us Dr. Borsky's counsel candidly acknowledges that plaintiff's testimony indicated she did not learn the lens was experimental before late 1990 or early 1991, that the judge did not find her incredible in this regard, and that counsel has no basis for suggesting that she knew earlier. As a result, we reverse the dismissal of plaintiff's complaint filed in May 1991 against defendants, and remand for further proceeding on the claim of informed consent.

[Id. at 667, 690 A.2d 150.]
Following Lombardo, the same appellate panel decided Baird v. American Med. Optics, 301 N.J.Super. 7, 693 A.2d 904 (App. Div.), certif. granted, 151 N.J. 467, 700 A.2d 879 (1997). In Baird, the plaintiff filed a complaint in February 1992 against the manufacturer of her intraocular lens, the physician who implanted it during surgery in 1983, and the hospital where the surgery was performed. Id. at 9, 693 A.2d 904. On appeal, this court noted:
The judge who dismissed the action against [the physician] reasoned that plaintiff "was well-aware that she had a problem, she was well-aware that it came from the surgery," became "dissatisfied with the treatment by [the physician]" shortly after the surgery, and "switched to other physicians" by 1985.

[Id. at 9-10, 693 A.2d 904.]
Further, the plaintiff in Baird signed an "`Informed Consent Form for Cataract Operation and/or Implantation of Intraocular *1026 Lenses' indicating the risks of the implant surgery and detailing alternatives." Id. at 11, 693 A.2d 904.
Still, in reviewing the testimony of the Lopez hearing, this court concluded that the plaintiff did not become aware that the implanted lens was experimental until March 1991, and thus her informed consent claim filed in February 1992 was timely filed. Id. at 11-12, 693 A.2d 904. We reversed the trial court and remanded for further proceedings on the plaintiff's informed consent claim. Id. at 19, 693 A.2d 904.
We respectfully disagree with this court's reasoning in both Lombardo and Baird, and hold that under circumstances almost identical to those two cases, plaintiff's informed consent claim here was properly time-barred. According to plaintiff's complaint, pre-trial deposition testimony and testimony at the Lopez hearing, she suffered extreme post-surgical complications. Despite those complications, plaintiff continued to see defendant. Ultimately, she changed her physician and was seen by a Dr. Greenspan. When plaintiff's complaints were not remedied, Dr. Greenspan referred her to a Dr. Witland, whom she first consulted in either December 1989 or January 1990, and who informed plaintiff that the intraocular lens implanted on September 22, 1982, was defective. Plaintiff underwent additional surgery on March 5, 1990, to remove the original intraocular lens and implant a new lens. Plaintiff's complaint was filed on July 15, 1991.
At the conclusion of the Lopez hearing, the motion judge concluded that plaintiff had a reasonable belief immediately following her initial surgery in 1982 that her continued medical problems were attributable to the lens implantation. This conclusion was predicated on plaintiff's testimony that prior to her 1982 surgery, defendant informed her that she would see perfectly well and would have no pain following surgery. Plaintiff testified that defendant specifically told her that the intraocular lens he intended to implant was not perfected at that time. Plaintiff also testified that not long after the surgery she began to experience constant stabbing pain and pressure in her eye and glared vision, symptoms diametrically opposite the predicted surgical result. Additionally, plaintiff testified that when her symptoms of pain, pressure and glare did not improve, she concluded that defendant "had not done everything right" and that "the pain was related to the implant." The motion judge thus concluded that plaintiff's complaint was barred by the statute of limitations, N.J.S.A. 2A:14-2.
An "informed consent" cause of action is based on a negligence concept and is
predicated on the duty of a physician to disclose to a patient such information as will enable the patient to make an evaluation of the nature of the treatment and of any attendant substantial risks, as well as of available options in the form of alternative therapies.
[Largey v. Rothman, 110 N.J. 204, 208, 540 A.2d 504 (1988) (citations omitted).]
To establish a lack of informed consent, the plaintiff must show that: (1) the physician failed to comply with the applicable standard for disclosure; (2) the undisclosed risk occurred and harmed the plaintiff; (3) a reasonable person under the circumstances would not have consented and submitted to the operation or surgical procedure had he or she been so informed; and (4) the operation or surgical procedure was a proximate cause of plaintiff's injuries. Id. at 215, 540 A.2d 504; Caputa v. Antiles, 296 N.J.Super. 123, 133-34, 686 A.2d 356 (App.Div.1996), certif. denied, 149 N.J. 143, 693 A.2d 112 (1997).
The "prudent patient" or "materiality of risk" standard is used to determine whether a physician has complied with the disclosure requirements. Largey, supra, 110 N.J. at 212-13, 540 A.2d 504; Caputa, supra, 296 N.J.Super. at 134, 686 A.2d 356. Under this standard, the physician must disclose all information material to a reasonably prudent patient's decision to undergo the proposed treatment. Largey, supra, 110 N.J. at 211-12, 540 A.2d 504; Posta v. Chung-Loy, 306 N.J.Super. 182, 202, 703 A.2d 368 (App.Div. 1997). The test of materiality is whether a "reasonable patient, in what the physician knows or should know to be the patient's position, would be `likely to attach significance *1027 to the risk or cluster of risks' in deciding whether to forego the proposed therapy or to submit to it." Largey, supra, 110 N.J. at 211-12, 540 A.2d 504 (quoting Canterbury v. Spence, 464 F.2d 772, 787 (D.C.Cir.), cert. denied, 409 U.S. 1064, 93 S.Ct. 560, 34 L. Ed.2d 518 (1972)); Caputa, supra, 296 N.J.Super. at 134, 686 A.2d 356.
Our precise disagreement with Lombardo and Baird stems, in part, from the fact that both decisions ignore the specific conclusion reached in Largey, supra, that an "informed consent" cause of action is based on a negligence concept. 110 N.J. at 208, 540 A.2d 504. In Lombardo, supra, the court stressed that "[t]he theory of informed consent does not flow from medical malpractice itself, but from the failure to advise the patient thereby resulting in a `battery' on the person." 298 N.J.Super. at 664, 690 A.2d 150 (citing Perna v. Pirozzi 92 N.J. 446, 460, 457 A.2d 431 (1983); Skripek v. Bergamo, 200 N.J.Super. 620, 491 A.2d 1336 (App.Div.), certif. denied, 102 N.J. 303, 508 A.2d 189 (1985)). However, In Largey, the Court clearly indicated that
[a]lthough that cause of action, [battery] continues to be recognized in New Jersey, see Perna v. Pirozzi, 92 N.J. 446, 459-63, 457 A.2d 431 (1983) (operation on a patient by a surgeon to whom the patient has not given any consent constitutes battery), there is no "battery" claim implicated in this appeal because the jury determined as a matter of fact that plaintiff had given consent to the node excision performed by Dr. Rothman.
[Id. at 208, 540 A.2d 504 (emphasis added).]
As we note infra, plaintiff here was informed that the intraocular lens which was to be implanted was not perfected and she consented to cataract surgery using that lens. Thus, like Largey, the concept of "battery" is not implicated in this appeal.
The evidence adduced at the Lopez hearing fully demonstrates that plaintiff was aware or should reasonably have been aware of her informed consent claim against her physician shortly after her surgery in 1982. She had been advised pre-surgery that she would be able to see perfectly well post-surgery but, in fact, had glared vision. She had been advised pre-surgery that she would have no pain post-surgery but, in fact, suffered stabbing pain and pressure in her eye. Most importantly, plaintiff had been informed that the lens which was to be implanted in her eye was "not perfected." Although defendant did not fully explain the absence of Food & Drug Administration approval or that the lens was considered to be "experimental," nonetheless, plaintiff specifically admits that she knew the lens was "not perfected."
Plaintiff maintains on appeal that the trial judge improperly dismissed her claim against defendant because under the discovery rule she did not learn that a defective lens had been inserted into her eye until late 1989 or early 1990, and thus her complaint filed in July 1991 was timely.
As this court explained in Lombardo, supra," `[t]he discovery rule is essentially a rule of equity' developed `as a means of mitigating the often harsh and unjust results which flow from a rigid and automatic adherence to a strict rule of law.'" 298 N.J.Super. at 665, 690 A.2d 150 (quoting Lopez, supra, 62 N.J. at 273-74, 300 A.2d 563). The Supreme Court noted in Tevis v. Tevis, 79 N.J. 422, 432, 400 A.2d 1189 (1979), that the "discovery rule" is a rule of equity that allows the tolling of the statute of limitations "when a party is either unaware that he has sustained an injury or, although aware that an injury has occurred, he does not know that it is, or may be, attributable to the fault of another."
Hence, the statute of limitations does not begin to run until the injured party is aware "of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct may have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care."
[Lombardo, supra, 298 N.J.Super. at 666, 690 A.2d 150 (quoting Savage v. Old Bridge-Sayreville Med. Group, 134 N.J. 241, 248, 633 A.2d 514 (1993)).]
*1028 Utilizing these principles, it seems clear that, like the plaintiffs in Lombardo and Baird, plaintiff knew post-surgery that the surgical result was not as expected, that her physician had not discussed any alternatives to the surgical procedure he intended to utilize, that defendant "had not done everything right," and that "the pain was related to the implant." Further, plaintiff here was aware that the lens implanted was not perfected. In sum, there is evidence that defendant may have been negligent, and that plaintiff was or should have been aware of this in 1982. Nevertheless, following the reasoning of Lombardo, plaintiff's informed consent claim, filed in July 1991, was not untimely filed because she did not learn that the lens was "experimental," at the earliest, before December 1989 or January 1990, when Dr. Witland informed her that the implanted lens was defective.
However, we can find no differentiation, as this court in Lombardo and Baird did, between a plaintiff's knowledge that an implanted lens was "experimental," "defective," without Food & Drug Administration approval, as phrased in plaintiff's complaint, or "not perfected," of which plaintiff was aware presurgery in 1982. We believe that the equitable considerations underlying the discovery rule do not include such minor distinctions, as "it is not whether the plaintiff learns `the state of the law positing a right of recovery upon the facts already known to or reasonably knowledgeable by the plaintiff,' but rather the state of the facts that equate with such a cause of action." Graves v. Church & Dwight Co., Inc., 115 N.J. 256, 267, 558 A.2d 463 (1989) (quoting Burd v. New Jersey Tel. Co., 76 N.J. 284, 292, 386 A.2d 1310 (1978)).
Plaintiff here may not have known she had an "informed consent" claim post-surgery in 1982, but she did learn "the state of the facts" that comprise such a cause of action. Applying the discovery rule here, plaintiff at all times had "knowledge concerning the origin and existence of [her] injuries as related to the conduct of [defendant]." Lynch v. Rubacky, 85 N.J. 65, 70, 424 A.2d 1169 (1981). Since post-surgery 1982, she attributed her continued eye problems to her 1982 surgery performed by defendant, and knew that she had not been apprised by defendant of alternative treatments and possible consequences of that procedure. Although plaintiff may not have learned until December 1989 or January 1990 that defendant implanted a defective lens, she certainly was aware as early as September 1982 that her cataract surgery which implanted a lens which was "not perfected" was the cause of her continuous ophthalmological difficulties. Therefore, plaintiff's complaint, filed July 15, 1991, was time-barred, N.J.S.A. 2A:14-2, and was properly dismissed.
Affirmed.
LONG, P.J.A.D., dissenting.
In my view, this case is indistinguishable from Lombardo v. Borsky, 298 N.J.Super. 658, 690 A.2d 150 (App.Div.), certif. granted, 150 N.J. 28, 695 A.2d 671 (1997), appeal dismissed, 153 N.J. 44, 707 A.2d 149 (1998) and Baird v. American Med. Optics, 301 N.J.Super. 7, 693 A.2d 904 (App.Div.), certif. granted, 151 N.J. 467, 700 A.2d 879 (1997) and, based on the reasoning in those cases, to which I ascribe, I would reverse.
NOTES
[1] On appeal, plaintiff does not contend that the motion judge erred in granting summary judgment to defendant hospital. We conclude plaintiff has abandoned its appeal of the grant of summary judgment as to the hospital. Even if this was not so, we note that we "have found no cases, and are cited to none, in which the courts of New Jersey have recognized the obligation of a hospital to obtain informed consent before permitting surgery at its facility." Baird v. American Med. Optics, 301 N.J.Super. 7, 12, 693 A.2d 904 (App.Div.), certif. granted, 151 N.J. 467, 700 A.2d 879 (1997); see Lombardo v. Borsky, 298 N.J.Super. 658, 661 n. 1, 690 A.2d 150 (App.Div.), certif. granted, 150 N.J. 28, 695 A.2d 671 (1997), appeal dismissed, 153 N.J. 44, 707 A.2d 149 (1998).

As noted in Baird, supra, 301 N.J.Super. at 12, 693 A.2d 904, "The hospital must generally rely on the relationship between a patient and his or her physician and not interfere with or intervene in that relationship."