

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-28-2000

# Chamberlain v Giampapa

Precedential or Non-Precedential:

Docket 99-5069

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Chamberlain v Giampapa" (2000). *2000 Decisions.* Paper 68.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/68

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 28, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5069

ROBIN CHAMBERLAIN,
        Appellant

v.

VINCENT C. GIAMPAPA, M.D., individually and dba
PLASTIC SURGERY CENTER INTERNATIONALE

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 98-cv-01048)
District Judge: Honorable Maryanne Trump Barry

Argued: November 16, 1999

BEFORE: ALITO and STAPLETON, Circuit Judges, and
FEIKENS,* District Judge

(Filed: March 28, 2000)

_____
*Honorable John Feikens, Senior United States District Judge for the
Eastern District of Michigan, sitting by designation.


        Howard B. Felcher (Argued)
        20 Northfield Avenue
        West Orange, NJ 07052
         Attorney for Appellant

        Stephen O. Mortenson (Argued)
        Mortenson & Pomeroy
        155 Morris Avenue
        Springfield, NJ 07081
         Attorney for Appellee

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Robin Chamberlain appeals from the dismissal of her
medical malpractice complaint filed in the United States
District Court of New Jersey. Count I of the complaint
alleged negligent medical treatment and care by the
defendant physician, and Count II alleged a failure to

properly advise and inform the plaintiff of the nature and extent of a surgical procedure the defendant performed on her. Jurisdiction was based on the diversity of the citizenship of the parties. The District Court dismissed both counts of Chamberlain's complaint with prejudice  for failure to file a timely affidavit of merit pursuant to N.J. Stat. Ann. SS 2A:53A-26 to -29 (West 1987) ("the New Jersey affidavit of merit statute").1

_____

1. Section 2A:53A-27 provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the

> plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists
> a reasonable probability that the care, skill or knowledge exercised

> or exhibited in the treatment, practice or work that is the subject of
> the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, tofile the affidavit pursuant to this section, upon a finding of good cause.

2

Chamberlain also appeals the denial of her cross-motion for (1) a sixty-day extension in which to file the affidavit of merit; or (2) an order allowing the affidavit of merit to be filed nunc pro tunc; or (3) permission to amend the complaint and attach the affidavit of merit; and/or (4) an order striking defendant's answer as untimely and granting plaintiff a default judgment.

We address five distinct issues in the disposition of this appeal:

> 1) Whether the New Jersey affidavit of merit statute can properly be applied by a federal court sitting in diversity;

> 2) Whether the New Jersey affidavit of merit statute applies to a claim based on the absence of informed consent;

> 3) If the New Jersey statute does apply in diversity

actions, whether Chamberlain's complaint was properly dismissed with prejudice for failure tofile an affidavit of merit;

4) Whether the District Court erred in dismissing the entire complaint, when one or more of the alleged acts of negligence may have occurred before the effective date of the New Jersey affidavit of merit statute;

5) Whether the District Court abused its discretion in denying Chamberlain's motion for default judgment.

We hold that the New Jersey affidavit of merit statute does not conflict with the Federal Rules of Civil Procedure and must be applied by federal courts sitting in diversity; the District Court did not plainly err in applying the affidavit of merit statute to the lack of informed consent cause of action; there are no extraordinary circumstances that would warrant dismissal without prejudice; and the denial of a default judgment was not an abuse of discretion. However, we further conclude that the District Court erred in dismissing the plaintiff's case when the record indicates that one or more of the alleged negligent acts occurred before the effective date of the affidavit of merit statute. Accordingly, we will reverse the judgment of the District

Court and remand for further proceedings consistent with the opinion.

I.

The New Jersey affidavit of merit statute applies to medical malpractice causes of action that "occur" on or after June 29, 1995, the effective date of the statute.2 It requires that the plaintiff file an affidavit of a licensed physician within 60 days of the date the answer isfiled or face dismissal of the complaint. In the affidavit, the physician must state that a "reasonable probability" exists that the care that is the subject of the complaint falls outside acceptable professional standards. N.J. Stat. Ann. S 2A:53A-27. In lieu of an affidavit, the plaintiff may provide a sworn statement that, after written request, the defendant failed to provide the plaintiff with records that have a substantial bearing on preparation of the affidavit.3 N.J. Stat. Ann. S 2A:53A-28. Failure to provide either the affidavit or the sworn statement within 60 days, or 120 days if the court grants an extension for good cause, results in dismissal for "failure to state a cause of action."4 N.J. Stat. Ann. S 2A:53A-29.

_____

2. "This act shall take effect immediately[June 29, 1995] and shall apply to causes of action which occur on or after the effective date of this act."
Affidavit of Merit Bill, Act of June 29, 1995, ch. 139, S 5, 1995 N.J. Laws

457.

3. "An affidavit shall not be required pursuant to [N.J. Stat. Ann. S 2A:53A-27] if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff

with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the medical records or other records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request."
N.J. Stat. Ann. S 2A:53A-28.

4. "If the plaintiff fails to provide an affidavit or a statement in lieu thereof, pursuant to [N.J. Stat. Ann. S 2A:53A-27 or S 2A:53A-28], it shall

be deemed a failure to state a cause of action." N.J. Stat. Ann. S 2A:53A-29.

4

In January of 1994, Dr. Vincent C. Giampapa performed plastic surgery on the plaintiff's nose. Thereafter, he injected cortisone in her nose on several occasions. On August 20, 1995, the plaintiff visited Dr. Giampapa for a checkup and, at his suggestion, she allowed him to perform a second plastic surgery, which she expected to be minor. The plaintiff claims Dr. Giampapa instead performed extensive surgery without properly advising her about, and obtaining consent for, the procedure. The plaintiff experienced problems after the August 20 surgery, and, as a result, Dr. Giampapa performed additional plastic surgery on March 20, 1996. When the plaintiff continued to experience problems, she sought medical care and treatment from another plastic surgeon and underwent extensive reconstructive surgery.

The plaintiff sued Dr. Giampapa on March 10, 1998, alleging negligence with respect to her medical care and treatment. The defendant's answer, filed on May 8th, responded to the complaint in full but did not include a demand for an affidavit of merit from the plaintiff.

The Magistrate Judge issued a Pre-Trial Scheduling

Order on June 10th and the defendant provided the plaintiff with her medical records on June 17th, three weeks before the deadline for filing an affidavit of merit. The plaintiff did not file an affidavit of merit within 60 days of the answer being filed and did not request an extension before the 60-day statutory period expired. The plaintiff made no attempt to file the affidavit or request an extension until the defendant filed his motion to dismiss in November 1998.

The scheduling order did not mention the affidavit requirement and, according to the parties, no discussion of the affidavit of merit took place at the June 10 scheduling conference. Nevertheless, as part of the scheduling order, the plaintiff was directed to serve an expert report on the defendant no later than September 30, 1998, which she did. In the report, the expert stated his opinion that the treatment by the defendant deviated significantly from the accepted standards of medical care and that the plaintiff suffered permanent nasal deformity and associated breathing difficulties as a result.

The defendant thereafter filed a motion to dismiss based on the plaintiff's failure to file an affidavit of merit. On the same day, the plaintiff filed her cross-motion. The District Court denied the plaintiff's cross-motion in its entirety and granted the defendant's motion to dismiss. Both counts of the complaint were dismissed with prejudice. The plaintiff appeals both the dismissal of her complaint and the denial of her cross-motion.

II.

A. The Choice Of Law Issue

A federal court sitting in diversity must apply state substantive law and federal procedural law. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). This substantive/procedural dichotomy of the "Erie rule" must be applied with the objective that "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court [will] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." Guaranty Trust Co. v. York, 326 U.S. 99, 109 (1945). This focus on whether application of a state rule will or may affect the outcome is intended to serve "twin aims":"discouragement of forum shopping and avoidance of inequitable administration of the laws." Hanna v. Plummer , 380 U.S. 460, 468 (1965). Accordingly, the outcome determinative

test should not produce a decision favoring application of the state rule unless one of these aims will be furthered:

> Erie and its progeny make clear that when a federal court sitting in a diversity case is faced with a question of whether or not to apply state law, the importance of a state rule is indeed relevant, but only in the context of asking whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of

6

> the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

Hanna, 380 U.S. at 468 n. 9.

The Supreme Court has added two caveats to these Erie principles. First, even though application of the state rule may hold some potential for affecting the outcome, a strong countervailing federal interest will dictate recourse to the federal rule. Byrd v. Blue Ridge Rural Electric Coop, Inc., 356 U.S. 525 (1958). Second, the Erie rule may not be "invoked to void a Federal Rule" of Civil Procedure. Hanna v. Plummer, 380 U.S. 460, 470 (1965). Where a Federal Rule of Civil Procedure provides a resolution of an issue, that rule must be applied by a federal court sitting in diversity to the exclusion of a conflicting state rule so long as the federal rule is authorized by the Rules Enabling Act and consistent with the Constitution. Id.

Under Hanna, a federal court sitting in diversity first must determine whether a Federal Rule directly "collides" with the state law it is being urged to apply. See id. at 470-74. If there is such a direct conflict, the Federal Rule must be applied if it is constitutional and within the scope of the Rules Enabling Act. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 n. 7 (1996). If a "direct collision" does not exist, then the court applies the Erie rule to determine if state law should be applied. Hanna , 380 U.S. at 470.

In deciding whether a Federal Rule "directly collides" with a state law, the federal court sitting in diversity must consider whether the scope of the Federal Rule is "sufficiently broad to control the issue before the Court," Walker v. Armco Steel Corp., 446 U.S. 740, 749-50 (1980), "thereby leaving no room for the operation of[the state] law," Burlington Northern R.R. Co. v. Woods, 480 U.S. 1, 4-

5 (1987). Although the Rules should be given their plain meaning and are not to be construed narrowly in order to avoid a direct collision, see Walker, 446 U.S. at 750 n. 9, "a broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits." Stewart Org., Inc. v. Ricoh, 487 U.S. 22, 37–38 (1988). "Federal courts have interpreted the Federal

7

Rules, however, with sensitivity to important state interests and regulatory policies." Gasperini, 518 U.S. at 427 n.7.

In the case at hand, the plaintiff argues the New Jersey affidavit of merit statute conflicts with Federal Rules 8 and 9, which govern the content of pleadings in federal actions. Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The only situations that require pleading with particularity are specified in Fed. R. Civ. P. 9, and a malpractice claim is not one of the situations listed in that rule. There is, of course, no contention that Federal Rules 8 and 9 are beyond the scope of the Rules Enabling Act or inconsistent with the Constitution.

We find no direct conflict between the New Jersey affidavit of merit statute and Federal Rules 8 and 9. Rules 8 and 9 dictate the content of the pleadings and the degree of specificity that is required. The rules' overall purpose is to provide notice of the claims and defenses of the parties. The affidavit of merit statute has no effect on what is included in the pleadings of a case or the specificity thereof. The required affidavit is not a pleading, is notfiled until after the pleadings are closed, and does not contain a statement of the factual basis for the claim. Its purpose is not to give notice of the plaintiff's claim, but rather to assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings. This state policy can be effectuated without compromising any of the policy choices reflected in Federal Rules 8 and 9. In short, these Federal Rules and the New Jersey Statute can exist side by side, "each controlling its own intended sphere of coverage without conflict." Walker v. Armco Steel Corp., 446 U.S. 740, 752 (1980). 5

_____

5. Affidavit of merit (or similar) statutes have been applied by federal courts in many states without finding a direct collision with Federal Rules. See Finnegan v. Univ. of Rochester Med. Ctr., 180 F.R.D. 247 (W.D.N.Y. 1998) (holding that state statute requiring that complaint in medical malpractice action be accompanied by certificate of merit is a substantive law that applies in a federal diversity action); Connolly v. Foudree, 141 F.R.D. 124 (S.D. Iowa 1992) (finding no direct conflict

between state statute requiring early disclosure of expert witnesses in

8

In reaching our conclusion that there is no direct collision here, we are not unmindful of the stipulation in the New Jersey statute that a failure to file the required affidavit "shall be deemed a failure to state a cause of action." N.J. Stat. Ann. 2A:53A-29. Contrary to the plaintiff's suggestion, we do not read this stipulation as implying that a failure to file the required affidavit somehow renders pleadings insufficient that would otherwise be sufficient. We read the "deeming" language to be no more than the New Jersey legislature's way of saying that the consequences of a failure to file shall be the same as those of a failure to state a claim. See Cornblatt v. Barow, 708 A.2d 401, 415 (N.J. 1998) (interpreting "deeming" test to mean that the failure to file must result in a dismissal with prejudice unless extraordinary circumstances are shown).

Finding no direct collision, we proceed to the second part of the Hanna analysis. Applying traditional Erie principles,

_____

professional liability cases and FED. R. CIV. P. 26(b)(4)(A)(i), concluding

the state statute went beyond the requirements of the Federal Rule, but did not conflict with it); Hill v. Morrison, 870 F. Supp. 978 (W.D. Mo. 1994) (finding Missouri statute requiring plaintiff to file affidavit of merit within 90 days of filing complaint goes beyond requirements of FED. R. CIV. P. 11 but does not conflict with the Federal Rule, and therefore both state and federal rules may be given effect in federal court in diversity action); Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523 (10th Cir. 1996) (finding no collision between Colorado statute requiring plaintiff or attorney to file certificate within 60 days of filing complaint and FED. R. CIV. P. 11, noting similar intent of the state and federal rules, but concluding the state rule is more narrowly tailored and assesses penalties on plaintiff not attorney, so it can co-exist with Rule 11). But see, Boone v. Knight, 131 F.R.D. 609 (S.D. Ga. 1990) (finding a conflict between Federal Rule 8 and a Georgia statute requiring the filing of an affidavit with the complaint setting forth the facts upon which the claim is based).

Similar statutes in other states have been routinely applied by federal courts sitting in diversity without specifically going through the Hanna analysis. See, e.g., Morlan v. Harrington, 658 F. Supp. 24 (D.N.D. 1986) (applying North Dakota expert affidavit statute that requires expert opinion within three months of filing medical malpractice action); Law v. Greenwich Hosp., No. CIV. 396CV2147(AHN), 1997 U.S. Dist. WL 695506 (D. Conn. Oct. 21, 1997) (applying Connecticut statute requiring

certificate to be filed with complaint in medical malpractice actions).

we conclude that the New Jersey affidavit of merit statute is substantive state law that must be applied by federal courts sitting in diversity. The state statute is outcome determinative on its face, and failure to apply it would encourage forum shopping and lead to the inequitable administration of the law. Further, we perceive no overriding federal interest here that would prevent application of the state law by the federal courts.

By requiring dismissal for failure to adhere to the statute, the New Jersey legislature clearly intended to influence substantive outcomes. It sought early dismissal of meritless lawsuits, not merely to apply a new procedural rule. Clearly, failure to apply the statute in a federal diversity action where no affidavit of merit has been filed would produce a different outcome than that mandated in a state proceeding.

In addition to undercutting the state's interest in early dismissal of meritless lawsuits, failure to apply the state statute in federal courts could promote forum-shopping, despite the relatively low hurdle the New Jersey affidavit requirement presents to a legitimate claimant. Plaintiffs who have been unable to secure expert support for their claims and face dismissal under the statute in state court may, by filing in the federal court, be able to survive beyond the pleading stage and secure discovery. The resulting opportunity for a "fishing expedition," which would hold the hope of turning up evidence of a meritorious claim or of a settlement to save defense litigation costs, can reasonably be expected to affect the forum choice of these plaintiffs.

Failure to apply the New Jersey affidavit of merit statute also implicates the second of the "twin aims" of Erie, avoiding inequitable administration of the laws. A defendant in a federal court that refused to apply the affidavit requirement would be unfairly exposed to additional litigation time and expense before the dismissal of a non-meritorious lawsuit could be secured, merely because the plaintiff is a citizen of a different state. Perhaps more importantly, the reputation of the professional involved would be more likely to suffer the longer the lawsuit went on, putting added pressure on the defendant to settle rather than endure extensive discovery.

Finally, we must also consider whether any

countervailing federal interests prevent the state law from being applied in federal court. The only relevant federal interest that has been suggested is an interest in maintaining the integrity of the federal system of pleading embodied in the Federal Rules of Civil Procedure. We have previously concluded, however, that the New Jersey statute can be applied without compromising the federal system of pleading. Accordingly, we hold that the District Court did not err in applying the New Jersey affidavit of merit statute.

B. The Informed Consent Issue

The plaintiff argues that, under New Jersey common law, expert testimony is not required to establish a cause of action based on lack of informed consent, and that, as a result, the affidavit of merit statute should not apply to Count II of her complaint. We disagree.

Under New Jersey's prudent patient standard, a physician must disclose all information material to a reasonably prudent patient's decision to undergo the proposed treatment. See Largey v. Rothman, 540 A.2d 504 (N.J. 1988); Bennett v. Surgidev Corp., 710 A.2d 1023, 1026 (N.J. Super. Ct. App. Div. 1998). Accordingly, under this "patient-focused" standard, an expert is not required to establish a standard for disclosure or to prove that a physician failed to meet the standard. See Tyndall v. Zabonski, 703 A.2d 980, 982 (N.J. Super. Ct. App. Div. 1997). This does not mean, however, that a plaintiff with a claim based on lack of informed consent can prevail under New Jersey law without expert testimony. While expert testimony is not required to establish the standard for disclosure or to prove a physician failed to meet that standard, it is still required to prove other elements of her cause of action for lack of informed consent. See id. "A plaintiff alleging lack of informed consent has the burden of producing expert testimony to establish that the risk cited was one that the defendant should have been aware of because it was known to the medical community at the time." Id. Thus, "proof of a risk recognized by the professional community must come from a qualified expert." Id.

11

Because a plaintiff cannot prevail on a lack of informed consent claim under New Jersey law without expert testimony that the relevant risk was recognized by the professional community, we are confident that the New Jersey courts would find the affidavit of merit statute applicable to such claims.

C. The "Extraordinary Circumstances" Issue

In Cornblatt v. Barow, 708 A.2d 401, 413 (N.J. 1998), the Supreme Court of New Jersey held that "a dismissal for failure to comply with the [affidavit of merit] statute should be with prejudice in all but extraordinary circumstances." The District Court in this case acknowledged that it would be appropriate to grant permission for the filing of the required affidavit nunc pro tunc if extraordinary circumstances were present, but found none. Accordingly, it refused to give such permission and dismissed the case with prejudice.

What constitutes an "extraordinary circumstance" is a fact-sensitive analysis. See Hartsfield v. Fantini, 695 A.2d 259 (N.J. 1997). To find extraordinary circumstances, the court must determine that those circumstances "did not arise from an attorney's mere carelessness or lack of proper diligence." Id. (internal quotes omitted). "Generally, substantial compliance with the filing limitation and allegations that defendants used negotiations to lull the plaintiffs into missing the filing date will not constitute extraordinary circumstances. . . ." Id. In short, the circumstances must be "exceptional and compelling." Id. at 264.

We agree with the District Court that the circumstances here fall short of "exceptional and compelling." As it noted, the plaintiff has provided no adequate excuse for her failure to comply with the statute, and the most reasonable inference from the record is that plaintiff's counsel was simply unaware of the affidavit of merit requirement.

The plaintiff complains that because the defendant did not request the affidavit in his answer to her complaint and the District Court did not require it in the pre-trial scheduling order, she was "lulled" into believing an affidavit

12

of merit was not necessary. Neither the defendant nor the Court had a duty to call the attention of plaintiff's counsel to the requirements of the statute, however. If counsel had been aware of the statute, it is difficult to believe that he would have failed to comply in reliance on the answer and the scheduling order, and any such reliance, in any event, would have been unreasonable.6 The New Jersey statute clearly sets out the filing requirements and makes no provision for exemptions, except where the attorney applies for an extension for good cause. The plaintiff herefiled no motion for an extension and so had no statutory basis for an exemption from the affidavit requirement.

The plaintiff compares her case to Hyman Zamft and

Manard, L.L.C. v. Cornell, 707 A.2d 1068, 1072 (N.J. Super. Ct. App. Div. 1998), where the Appellate Division of the Superior Court of New Jersey found extraordinary circumstances existed. There, a mediation order implied that a "time-out" existed for parties to refile pleadings. In contrast, nothing occurred during this case that would lead the parties to believe a "time-out" from filing deadlines existed. It is true the Hyman Zamft Court also noted that no demand for the affidavit of merit was made in the responsive pleading, and no case management order of the trial court required filing of an affidavit of merit. These factors were cited by the Court in the course of its finding "extraordinary circumstances." See id. at 1071, 1072. Nevertheless, the Court also noted that the mediation order alone was sufficient grounds for excusing the failure to file the affidavit in a timely manner, indicating that this factor was the most influential in its decision.

The plaintiff here also compares some of the circumstances of her case to those of Barreiro v. Morrais, 723 A.2d 1244 (N.J. Super. Ct. App. Div. 1999). In Barreiro, the Court remanded for a hearing on whether extraordinary circumstances existed because a protracted delay by the

_____

6. If counsel had focused on the affidavit of merit statute, he would have been aware that it would be applied by the District Court. Prior to the filing of the complaint, the District Court had held that a federal court sitting in a diversity case was bound by that statute. RTC Mortgage Trust v. Fidelity National Title Insurance Co., 981 F. Supp. 334 (D.N.J. 1997).

13

defendants in providing legible hospital records had prevented timely filing of an affidavit. The plaintiff in Barreiro first requested medical records before filing the complaint and was rebuffed. After filing the complaint, the plaintiff made several requests for records and transcriptions thereof, since the original records were indecipherable. The transcriptions were not provided until 130 days after the defendants filed answers. See id. at 1249. The Barreiro Court opined that the purpose of the 60-day filing window is not to afford defendants with "a sword to fight off action by procrastinating in providing records and other relevant materials that a competent, conscientious expert would have to analyze before submitting an Affidavit of Merit." Id. at 1248.

Unlike the situation in Barreiro, where the defendants ignored repeated requests for medical records after the complaint was filed, the defendant here provided the necessary medical records one week after the pre-trial scheduling conference and three weeks before the affidavit

of merit had to be filed, sufficient time for the plaintiff to either obtain the affidavit of merit or file a motion for a 60-day extension. The repeated delays and indecipherable records in Barreiro constituted the "sword" the Court referred to in that case. In contrast, the "sword" the plaintiff complains about here is a perfectly legitimate motion filed by the defendant to dismiss the complaint for failure to file the affidavit of merit.

Because there are no circumstances here that rise to the "extraordinary" level required by Cornblatt, we must affirm the District Court's decision to dismiss with prejudice, at least with respect to the negligent acts that were alleged to have occurred after June 29, 1995, the effective date of the affidavit of merit statute.

D. The Pre-Statute Claims Issue

The New Jersey Supreme Court has held that "the [affidavit of merit] statute does not apply to malpractice actions filed on or after the effective date of the statute if the facts giving rise to the malpractice complaint occurred before that date." Cornblatt, 708 A.2d at 406. The Cornblatt

14

Court found the term "occur" as used in the statute to have the same meaning as "accrue," so the statute only applies to causes of action which accrue on or after June 29, 1995. See id. at 408. A cause of action accrues when the facts occur which give rise to a right of action.

The complaint in this action refers to three rhinoplasty proceedings, the first in January of 1994, the second in August of 1995, and the third in March of 1996. When deciding the defendant's motion to dismiss, the District Court looked beyond the complaint to determine whether the plaintiff had a claim that accrued prior to the effective date of the affidavit of merit statute. The Court dismissed the entire case based on the plaintiff's sworn answer to an interrogatory indicating that she "was satisfied with the first Rhinoplasty performed by Defendant," the only one that pre-dated the statute. As the Court correctly noted, "it is hornbook law that a court need not . . . consider a statement made to fend off a well supported motion to dismiss or for summary judgment which contradicts a prior statement made under oath." Op. at 5-6, n.1. We agree that the plaintiff is not now in a position to base a malpractice claim on the January 1994 surgery.

We note, however, that the record at the time of the dismissal contained sworn allegations, in the form of an affidavit of the plaintiff and her answers to interrogatories,

that the defendant's negligent treatment of the plaintiff included the injection of cortisone into her nose prior to the effective date of the statute. Also included in the record was a medical report of a licensed physician opining that "the cortisone injections were contraindicated in her condition." App. at 61.

We conclude that the District Court, having determined to go beyond the complaint in deciding defendant's motion to dismiss, could not, in fairness, ignore this competent evidence that pre-effective date malpractice occurred. Accordingly, we will remand for further proceedings on that claim only.

E. The Default Judgment Issue

In addition to appealing the District Court's dismissal of her complaint, the plaintiff contends the District Court

15

erred in declining to grant plaintiff's motion for default judgment based on defendant's late answer. Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. See United States v. $55,518.85 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). The District Court's refusal to enter a default judgment is subject to review under the abuse of discretion standard.

We agree with the District Court that a default judgment was not warranted here. The plaintiff is not prejudiced by the denial of default judgment because her failure to file the affidavit of merit on time was not related in any way to the defendant's late answer. The plaintiff received notice when the answer was filed May 8, 1998, and knew or should have known that the 60-day period to file the affidavit of merit began that day. If the plaintiff wanted to make a motion for default judgment before the 60-day affidavit of merit window closed, she could have done so. In addition, the defendant alleged a litigable defense to both counts of the complaint, and no record evidence suggests that the defendant's delay in filing an answer was due to culpable conduct, which in the Third Circuit is conduct that is "taken willfully or in bad faith." Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 124 (3d Cir. 1991).

III.

We will reverse the judgment of the District Court and remand for further proceedings on the plaintiff's claim that

the defendant was guilty of malpractice with respect to
cortisone injections occurring before June 29, 1995.

16

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

17